BRECK & SON *v.* UNITED STATES (No. 487).[1]

1. "HYACINTH" IN PARAGRAPH 261, TARIFF ACT OF 1909.

The only assignable reason for the change of "hyacinths" in paragraph 251, tariff act of 1897, to "hyacinth" in paragraph 263, tariff act of 1909, is the word in the last case was employed as an adjective and not a noun, and "hyacinth" in the connection there used must accordingly take its grammatical construction as an adjective; and this more especially as there is nothing to indicate a contrary intent in framing that paragraph.

2. HYACINTH CLUMPS.

Hyacinth clumps are clusters of roots or bulbs joined together and are within the ordinary meaning of the word "clumps."

3. HYACINTH BULBS.

A comparison between the former law and the later form of it seems to make it clear the importation was dutiable not as hyacinth, and so taking a higher duty, but as bulbs from which clumps are propagated, at a lesser rate of duty, under paragraph 261, tariff act of 1909.

## United States Court of Customs Appeals, May 1, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7085 (T. D. 30875).

[Reversed.]

*Brown & Gerry* and *Curtis Nye Smith* for appellants.
*D. Frank Lloyd,* Assistant Attorney General, for the United States.

Before MONTGOMERY, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

Hyacinth bulbs imported from Holland were assessed for duty by the collector of the port at Boston at the rate of $2.50 per thousand as "hyacinth" under paragraph 263 of the tariff act of 1909.

The paragraph reads:

263. Orchids, palms, azaleas, and all other decorative or greenhouse plants and cut flowers, preserved or fresh, twenty-five per centum ad valorem; lily of the valley pips, tulip, narcissus, begonia, and gloxinia bulbs, one dollar per thousand; hyacinth, astilbe, dielytra, and lily of the valley clumps, two dollars and fifty cents per thousand; lily bulbs and calla bulbs, five dollars per thousand; peony Iris Kæmpferii or Germanica, canna, dahlia, and amaryllis bulbs, ten dollars per thousand; all other bulbs, bulbous roots or corms which are cultivated for their flowers or foliage, fifty cents per thousand.

The importer, appellant here, maintains that they are dutiable at 50 cents per thousand under the last provision of the same paragraph, "all other bulbs." The Board of General Appraisers overruled the protest.

The determination of this issue, which is one essentially of construction of law, will be aided by an examination of paragraph 251 of the tariff act of 1897, of which the foregoing paragraph was the successor.

---

[1] Reported in T. D. 31576 (20 Treas. Dec., 966).

Paragraph 251 of the tariff act of 1897 reads as follows:

251. Orchids, palms, dracaenas, crotons and azaleas, tulips, hyacinths, narcissi, jonquils, lilies, lilies of the valley, and all other bulbs, bulbous roots, or corms, which are cultivated for their flowers, and natural flowers of all kinds, preserved or fresh, suitable for decorative purposes, twenty-five per centum ad valorem.

The conclusion herein reached is dependent upon whether or not the word "hyacinth," as used in paragraph 263, *supra*, is used as an adjective modifying the word "clumps," in the same paragraph, or as a noun, embracing therewith all merchandise covered by its import.

The scheme of enactment adopted in the act of 1897 obviously differs from that adopted in the act of 1909. In the act of 1897 plural nouns were used covering the various classes of merchandise intended to be made dutiable, followed by a modifying phrase defining the precise application in which the preceding nouns were employed by Congress. The plan of the act of 1909 differs. The subjects of legislation were divided in accordance with the rate to be applied, those assessed at the same rate being included in the same brackets, the brackets being divided by a semicolon. The first bracket followed the scheme of the act of 1897 by using nouns with a general modifying phrase and applying the same ad valorem rate. The remaining brackets adopted the adjectival plan. In the whole scheme, with reference to these brackets, excepting the first, a change from the plural in the act of 1897 to the singular in the act of 1909 was adopted.

A change of legislative method is always deemed a change of meaning.

The natural presumption is that the phraseology of the statute was changed in order to change its meaning. The very fact that the prior act is amended demonstrates the intent to change the preexisting law, and the presumption must be that it was intended to change the statute in all particulars touching which we find a material change in the language of the act. United States v. Bashaw (50 Fed. Rep., 749) and Rothschild v. United States (179 U. S., 463).

The only conceivable reason for the changing of the word "hyacinths" from the plural in the act of 1897 to the singular in the act of 1909 is to make it an adjective instead of a noun. Strength is added to this conclusion by the fact that if the word is used in the act of 1909 as a noun, it is used differently from the manner in which similar words are customarily used in tariff acts, for when used as a noun descriptive of merchandise *eo nomine* such words are customarily used in the plural. If the nounal rather than the adjectival sense is to be given the word "hyacinth," as used in paragraph 263, it will differ from the obvious sense in which all such words are used in the framework of that paragraph and will stand alone as the one noun used in the paragraph in the singular rather than in the plural, and the one word used as a noun in several precisely similar texts.

That Congress considered "hyacinth" and the corresponding words in the paragraph used in an adjectival sense modifying the words "clumps" and "bulbs" at the end of each of the brackets is shown by the insertion of the word "pips" after the words "lily of the valley" in the second bracket. It would have been unnecessary if the words "lily of the valley" were used in the nounal sense and the word "bulbs" were modified by the word "gloxinia" only. The same inference is gathered from the second enumeration of "lily of the valley clumps" in the third bracket. If these words were used by Congress in the nounal sense, as contended by the Government, the single use of the words "lily of the valley" in the second bracket, without being followed by the word "pips," would have been sufficient to embrace lily of the valley clumps, pips, or bulbs, if the contention of the Government is true.

The grammatical construction of the phrase concedes to the word "hyacinth" an adjectival sense modifying the word "clumps."

It is a well-settled rule of construction that the grammatical sense must be adopted unless there are within the statute cogent reasons indicating a contrary intent upon the part of the lawmakers.

In Endlich on the Interpretation of the Statutes, section 2, it is stated:

The first and most elementary rule of construction is, * * * and that the phrases and sentences are to be construed according to the rules of grammar; and from this presumption it is not allowable to depart, unless adequate grounds are found, either in the context or in the consequences which would result from the literal interpretation, for concluding that the interpretation does not give the real intention of the Legislature.

More definitely applied, the same authority in section 414, after citing and reviewing many adjudged cases in point, states:

Indeed, in most cases, it will be found, on some ground of this sort, that, where several words are followed by a general qualifying expression which is as much applicable to the first as to the last, that expression is not limited to the last, but applies to all.

In Lewis's Sutherland Statutory Construction, section 408, the rule is affirmed in this language:

Statutes as well as other writings are to be read and understood primarily according to their grammatical sense, unless it is apparent that the author intended something different. In other words, it is presumed that the writer intended to be understood according to the grammatical purport of the language he has employed to express his meaning. This presumption gives way when it appears from a perusal of the context or the whole statute that the legislature did not grammatically express its intention.

There is nothing in the context of this paragraph or act which to our minds indicates that the word "hyacinth" was to be used other than in its grammatical sense and as such sentences are construed by the courts, to wit, as an adjective modifying the word "clumps." On the contrary, for the reasons stated before, we think the context

and history of the paragraph indicates the intention upon the part of Congress to use the word in an adjectival sense.

We are of the opinion, therefore, that by the proper provision of paragraph 263 Congress intended to and did levy a duty of $2.50 per thousand upon "hyacinth clumps," and that the only provision in that paragraph or the act for hyacinth bulbs is the provision for "all other bulbs."

The Government further answers this appeal by the statement that that construction should not be adopted for the reason that there is no such thing known as "hyacinth clumps."

It is conceded by all parties to the record that the particular importation is a "hyacinth bulb." It was shown clearly by the record, which is replete with all obtainable information upon the subject, that a "clump" from a horticultural standpoint is a "cluster of thickly grown plants and the roots intermingled together. It always takes two or more plants to make a cluster or clump;" and, further, quoting the testimony of another witness, it is " a mass of crowns or underground buds shooting from no common center, having several different germinating follicles in this mass."

"Bulb," as the word signifies, is defined as a germinating follicle, " emitting from its center within its flower shoots and foliage, and all from one common center."

These descriptive definitions, of which there are many in the record, are in accord with and in nowise differ from the common understanding and acceptation of those terms as applied to the subject matter.

It is shown by the record that the propagation of the hyacinth is one covering an extended period of time, and of peculiar development. Briefly stated, and there is no controversy in the record upon this point, to effect that purpose hyacinth bulbs peculiarly fitted therefor are chosen; the bulb is then scooped out or T crosses made on the exterior and bottom with a knife; it is then stored in a dry warm place until little "bulblets," so-called, are started; these little bulblets germinate upon the wounds of the bulb made by the scooping or cutting; it is maintained in a particular temperature for about three months, whereupon these little bulblets are formed; the result is then planted like an ordinary bulb, and the little bulblets grow in the mother bulb and form little sprouts, and while in the ground gradually consume the mother bulb, whereupon they are taken up to be dried and planted again, which process is repeated until they become a matured hyacinth.

Pictures were introduced showing the cluster of little bulblets on a mother bulb, and it is claimed by the importer, appellant, and was testified by the witnesses that this is what could be properly characterized as a "hyacinth clump." It is undoubtedly a cluster of roots or bulbs joined together, and within the ordinary understanding of the

word "clumps." That such clumps exist in Holland in great numbers, are interchanged among the growers there, and occasionally, though in rare instances, are imported into this country, is made clear by the record. As shown by the record, successful importation must be attended with very great care. For experimental propagation of these, the record shows, importations have been made by the Government, a plant has been established in the State of Washington, and their cultivation made a matter of governmental attention and effort.

In the light of these facts this court does not feel warranted in disturbing the grammatical construction and apparent intent of the Congress in the enactment of paragraph 263 as affecting hyacinth clumps. Indeed the act being a protective one for the purpose of not alone maintaining existing industries, but particularly for the purpose of developing new industries, these facts appear to be in perfect harmony with the purposes of the act and argue an intention of the Congress to levy a duty upon hyacinth clumps, and in furtherance of the propagation thereof a lesser duty upon the hyacinth bulb from which the clump is propagated.

*Reversed.*