## HEIDE *v.* UNITED STATES (No. 645).[1]

ALMONDS, SHELLED, INTERMIXED WITH DIRT.

There is no question of commercial designation raised, and no allowance is claimed because of the presence of dirt or refuse. A review of the history of tariff provisions relative to almonds makes it plain there was no intention on the part of the Congress to depart from an established usage of years by which almonds shelled bore a higher rate of duty than almonds unshelled, and by which almonds *eo nomine* were made to take a duty higher than the duty imposed on nuts generally "of all kinds," not specially provided for. The importations were properly held dutiable under paragraphs 269, tariff act of 1897, and 280, tariff act of 1909, respectively, as clear almonds, shelled.

United States Court of Customs Appeals, January 11, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7199 (T. D. 31475).

[Affirmed.]

*Kammerlohr & Duffy, John G. Milburn*, and *John G. Milburn, jr.*, for appellant.
*Wm. L. Wemple*, Assistant Attorney General (*Frank L. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This case involves almonds imported under the tariff acts of 1897 and of 1909. One hundred and twenty-one protests relate to importations made under the earlier and 21 to those made under the later act. The question is whether these almonds are dutiable as assessed under the provisions of paragraph 269 of the act of 1897 and paragraph 280 of the act of 1909, which are as follows:

269. Almonds, not shelled, four cents per pound; clear almonds, shelled, six cents per pound.

280. Almonds, not shelled, four cents per pound; clear almonds, shelled, six cents per pound; apricot and peach kernels, four cents per pound.

or under paragraph 272 of the act of 1897 and paragraph 283 of the act of 1909, which are as follows:

272. Nuts of all kinds, shelled or unshelled, not specially provided for in this Act, one cent per pound.

283. Nuts of all kinds, shelled or unshelled, not specially provided for in this section, one cent per pound; but no allowance shall be made for dirt or other impurities in nuts of any kind, shelled or unshelled.

The Board of General Appraisers overruled the protests.

These almonds are of the kinds known as Bari, Sicily, and Majorca almonds, and are imported in bulk in burlap bags containing from 110 pounds to 220 pounds each. They have been removed from the shells and as imported are intermixed with dirt, dust, and pieces of shell. Some of the almonds are broken and some imperfect.

The contention of the importer here is that these almonds are not "clear almonds, shelled" within the meaning of the quoted paragraphs of the respective acts and that therefore they are dutiable under the provisions relating to "nuts of all kinds" in the paragraphs above quoted.

No question of·commercial designation is raised and the importer does not claim any allowance in duties on the merchandise by reason of the presence therein of dirt, dust, and pieces of shell. The evidence by which this admixture of dirt, dust, and pieces of shell is shown to be present in the importations was introduced solely for the purpose of establishing that these almonds are not "clear almonds, shelled" as the importer interprets that expression in the statute.

The importer's claim is that the words "clear.almonds, shelled" means the selected almond meats ready for consumption, unbroken in form, substantially perfect in shape, covered with the brown outer skin which is characteristic of almonds, and from which all dirt, dust, and pieces of shell have been removed. He introduced in evidence samples of such a product, commonly called "Jordan" almonds, which apparently possess all the qualities required to satisfy his claim and which are an article of commerce. He also shows·that the importations here, after being subjected to three or four manipulations, will yield substantially a like product, and it appears that the somewhat general practice is to so treat almonds like these before they are sold to the retail trade.

The Government, on the other hand, contends that the term "clear almonds, shelled," means the almond·kernels from which the shells have been substantially removed and which are in an approximately clean condition, needing only such further attention in order to fit them for final use as any conscientious manufacturer would feel bound to give in order to make them completely ready for human consumption, and urges the importations here are such.

The fact will not be lost sight of that in the disposition of this case it is not material what is the exact amount or percentage of the impurities mentioned that is found to exist in these importations, because it is apparent that a substantial amount exists, enough to take the same out of the importer's interpretation of the expression "clear almonds, shelled," and also because, as hereinbefore stated, the importer has expressly waived any claim for allowance by reason of the presence thereof.

Since 1804 almonds in some form or other have usually, but not always, been subjected to a duty. By the act of the year last men-

tioned it was provided that almonds, without regard to their condition, should pay a duty of 2 cents per pound; in 1816 it was increased to 3 cents per pound; in 1846 almonds were declared dutiable at 40 per cent ad valorem and nuts not otherwise specially provided for at 30 per cent ad valorem; in 1861 the duty on shelled almonds was placed at 4 cents, on almonds at 2 cents, and on other nuts not specially provided for at 1 cent per pound, while later in the same year the duty on shelled almonds was raised to 6 cents, on almonds to 4 cents, and upon nuts not otherwise specially provided for to 2 cents per pound; in 1864 almonds were required to pay 6 cents and shelled almonds 10 cents per pound duty, and nuts not otherwise provided for were either free or dutiable at some low rate; and in 1883 the statute relating to the subject was revised and enacted as follows:

Nuts:

Almonds, five cents per pound; shelled, seven and one-half cents per pound; filberts and walnuts, of all kinds, three cents per pound.

Peanuts or ground beans, one cent per pound; shelled, one and one-half cents per pound.

Nuts of all kinds, shelled or unshelled, not specially enumerated or provided for in this act, two cents per pound.

The act of 1890 fixed the duty upon almonds not shelled at 5 cents per pound, clear almonds, shelled, $7\frac{1}{2}$ cents per pound; the acts of 1894, 1897, and 1909 each respectively provided a higher rate of duty upon clear almonds, shelled, than upon almonds not shelled, and fixed a lower duty than either of those imposed upon almonds upon nuts of all kinds, shelled or unshelled, not specially provided for, and the act of 1909 also provided that no allowance should be made for dirt or other impurities in nuts of any kind, shelled or unshelled.

A cursory review of these statutes at once suggests that Congress in dealing with the subject of almonds has consistently endeavored to provide for duty thereon *eo nomine* in any shape in which the same might become the subject of importation, and did not intend that almonds in any form should be imported at the lesser rate of duty which has always obtained upon nuts not specially provided for.

It is agreed that the word "clear," as descriptive of almonds, was first used in the tariff act of 1890, since which time it has been retained.

The evidence shows that for over 30 years almonds from which the shells have been removed, whether they were like the importations here or of a higher or lower grade, have been classified for duty, if imported prior to 1890, as shelled almonds, and if imported subsequent thereto, as clear almonds, shelled, at the port of New York, and from the history of this and other cases it is apparent that such importations were of no inconsiderable amounts. During all this time it is not shown that protests against this classification have ever been made until within the last three or four years, to which reference will later be made.

The construction of some phases of the almond statute has been before the board and the courts, as well as the Treasury Department, but the precise question here involved has not been considered by either of them, so far as we are advised, until the case of Heide v. United States (175 Fed. Rep., 316), which was heard in the Circuit Court for the Southern District of New York and which was the result of the protests made in the last three or four years above referred to. In that case, the contention made by the importer here was sustained by the Circuit Court and the evidence before us tends to show that the merchandise there involved was of the same class as the importations here. This decision, it may be noted, was not rendered until after the enactment of the tariff law of 1909, hence no presumption that the same has received legislative recognition may be indulged in here. Aside from that case and contemporaneous or subsequent protests and litigation resulting therefrom, there is nothing to show nor is it claimed that during the whole history of tariff legislation almonds like the importations here have been claimed to be entitled to admission or have been admitted to duty under the provision relating to nuts not otherwise provided for.

It will be observed that the Heide case above referred to was an appeal from a decision of the Board of General Appraisers (T. D. 28816), in which the board had sustained the contention the Government makes here, and had also held, amongst other things, that no allowance should be made for shells, dust, dirt, and other impurities in shelled almonds that were not shown to be unusual or abnormal in quantity, as the goods were bought and sold in the commerce of this country, and further that this decision was the only adjudication as to the meaning of this statute which had been made prior to the enactment of the tariff law of 1909.

It may with some force be urged and it is urged by the Government that the action of Congress in reenacting the almond statute was a recognition that this construction of the almond paragraph by the Board of General Appraisers was correct, and further that by the amendment to the provision relating to nuts of all kinds, shelled or unshelled, in the law of 1897, found in paragraph 283 of the act of 1909, providing that no allowance should be made for dirt or other impurities in nuts of any kind, shelled or unshelled, Congress designed to settle the question that not only as to nuts, but as to almonds, there were but two classes, namely, one shelled and the other not shelled, thereby emphasizing its previous intention in that regard, as already pointed out.

In Notes on Tariff Revision the attention of Congress was specially called to the almond and nut paragraphs. Reference was therein made to the decision of the Board of General Appraisers last above referred to and the amendment which Congress made to paragraph 272, as above set forth, was therein suggested to it in the precise lan-

guage adopted as designed to prevent further litigation over the claims made by the importer in T. D. 28816. Nor was Congress left unaware of the importance of the subject, because it was in the same connection therein advised that the importations, apparently annually, of clear almonds, shelled, was valued at $1,773,709 and of almonds not shelled at $441,141.

It seems unbelievable that, with this information before it, Congress intended to depart from the practice that had then so long obtained in regard to the classification of almonds and from its own consistent policy; ever since almonds shelled and not shelled had been dutiable, to impose a higher rate of duty upon the former article.

It is proper, in interpreting an ambiguous statute, to determine whether the result of a claimed construction thereof is or is not inconsistent with the established policy of the law, if one can be ascertained, upon that subject. That policy, as already pointed out with reference to almonds, has generally been to treat them independently from nuts shelled or unshelled and has always been to impose a duty upon shelled almonds at least 50 per cent higher than that upon almonds not shelled. If "clear almonds, shelled" be held inapplicable to the importations here and they be found dutiable as shelled nuts, it is apparent that the shelled almonds will pay a much less duty than if they had been imported before being shelled. In other words, the product to which labor has been applied and which has been improved in its condition pays a less duty than the same article in its crude state. Not only this, but the evident purpose of Congress to treat almonds, not shelled or shelled, separately from nuts for duty purposes is defeated.

Such results, it must be confessed, are illogical and inconsistent and should not obtain unless required by the unambiguous language of the statute. Nor is this all; the construction insisted upon by the importer would seem to contravene the general theory of our tariff laws, which is to protect American industries, to equalize duties, and to provide revenue. American industries are not consistently protected by permitting entry of shelled almonds at a lesser rate than almonds not shelled. Such a course would not seem to result in an equalization of duties on almonds, and the Government would seem to be deprived of the revenue that for many years it has evidently intended shelled almonds should pay and which until very recently, as above pointed out, they have always paid upon importation into this country.

It is settled law that statutes should receive a sensible construction, one that is in harmony with the purposes of its enactment and will if possible avoid an unjust and absurd conclusion. United States v. Riggs (203 U. S., 136); Lau Ow Bew v. United States (144 U. S., 47, 59); Church of Holy Trinity v. United States (143 U. S., 457).

We advance to a consideration of the precise language of the paragraphs in question.

The importer says the term "clear almonds, shelled" has the same meaning as clear shelled almonds, and then by easy stages reaches the conclusion that it means only the clearest, cleanest, selected almonds that are the subject of commerce. The burden is upon him to sustain this contention.

Now, while the meaning of the word "clear" as used in the paragraph is not free from some doubt, and the purpose of Congress in placing it there is somewhat uncertain, if any deliberate purpose in so doing was entertained, we are of opinion it does not have the effect claimed by the importer. "Clear almonds" without the use of the further descriptive word "shelled" may mean almonds not shelled; that is, nothing but almond shells in their natural condition, including the meats or pits therein contained. The addition thereto of the word "shelled" would then mean such clear almonds in their natural condition with the shells removed. There is nothing in the record that tends to show that these importations were not before being shelled *clear almonds* in the sense above indicated, and there is nothing to show that the dirt, dust, and pieces of shell in these importations are not such as would naturally result from the shelling processes, whatever they may have been. In other words, no admixture of substances foreign to the clear almonds in the shell is shown to be present in these importations. On the other hand, Congress may have used the word "clear" in some other sense not suggested in this case and which it supposed was then applicable to the subject, or it may have used the word without intending thereby to make any change whatever in the meaning of the paragraph.

Says Lewis's Sutherland Statutory Construction, section 401, speaking of the rule that an amendment to a statute is not to be presumed to be without design:

Every change of phraseology, however, does not indicate a change of substance or intent. The change is often found to be the result of carelessness or slovenliness of the draftsman. The changes of phraseology may result from the act being the production of many minds and from being compiled from different sources. Hence the presumption of a change of intention from a change of language is of no great weight, and must mainly depend on the intrinsic difference as resulting from the modification. A mere change in the words of a revision will not be deemed a change in law unless it appears that such was the intention. The intent to change the law must be evident and certain; or it must be such substantial change as to import such intention, or it must otherwise be manifest from other guides of interpretation, or the difference of phraseology will not be deemed expressive of a different intention.

It is also well understood that unnecessary words are sometimes used in a statute evidently from an excess of caution, and it is not uncommon that words are sometimes used in a sense different than the meaning attributed thereto by lexicographers. An illustration of this may be found in paragraphs 283 and 272, above quoted, where the words "shelled or unshelled" are evidently used in contradistinction to each other, the former as referring to nuts with the shell on

and the other to nuts with the shell removed, and yet the word "un-shell," from which "unshelled" is derived, is uniformly defined by lexicographers as meaning to remove the shell from. It is, however, unnecessary to speculate what was the congressional intent evidenced by the use of the word "clear" so long as we are unable to attribute thereto the meaning urged by the importer.

If Congress had meant to impose a duty of 6 cents per pound only upon thoroughly cleaned and perfect almond meats, it were easy to have plainly so declared, and in view of the history of the tariff legislation on the subject, the administration thereof, and the principles of statutory interpretation to which reference has been made, we hold that failing to have so expressly declared the statute ought not to be so interpreted.

This conclusion makes it unnecessary to consider whether by his assignments of errors the importer has raised any question relating to the exclusion of evidence by the board or to consider whether there was error in such exclusion if that question were before us.

The result is that the judgment of the Board of General Appraisers is *affirmed.*

DE VRIES, Judge, did not sit in this case.