MALTUS & WARE *v.* UNITED STATES (No. 1611).[1]

1. CONSTRUCTION—CHANGE OF LANGUAGE SIGNIFIES CHANGE OF MEANING.

Congress must be presumed to have intended a change of meaning in changing the adjective " tulip," tariff act of 1909, to the noun " tulips," paragraph 210, tariff act of 1913.

2. SAME—PARAGRAPH NEEDS NO CONSTRUCTION—CONGRESS PRESUMED TO HAVE INTENDED ITS ACTS.

This paragraph as written is not ambiguous, and its application as written will lead to no absurdity, manifest contradiction of its apparent purpose, hardship, or injustice. There is, then, no occasion to invoke rules of construction; Congress must be presumed to have intended to make the change it did make; and this paragraph must be understood and applied according to the natural import of the language employed.

3. TULIP BULBS, HOW DUTIABLE.

Tulip bulbs are not dutiable as " tulips " under the second clause of paragraph 210, tariff act of 1913, but as " all other bulbs " under the sixth.

United States Court of Customs Appeals, January 28, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38202.

[Reversed.]

*Allan R. Brown* for appellants.

*Bert Hanson,* Assistant Attorney General (*Samuel Isenschmid,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The issue here is whether tulip bulbs are dutiable as assessed by the collector at $1 per thousand under the second clause in paragraph

[1] Reported in T. D. 36147 (30 Treas. Dec., 208).

210 of the tariff act of 1913, or as claimed by the importers at 50 cents per thousand under the sixth clause, the catch-all provision, therein.

The Board of General Appraisers, upon hearing, sustained the assessment and the importers' appeal.

The determination of the issue requires not only an examination of paragraph 210 but its predecessor, paragraph 263 of the act of 1909 as well, and we here insert them:

210. Orchids, palms, azalea indica, and cut flowers, preserved or fresh, 25 per centum ad valorem; lily of the valley pips, tulips, narcissus, begonia, and gloxinia bulbs, $1 per thousand; hyacinth bulbs, astilbe, dielytra, and lily of the valley clumps, $2.50 per thousand; lily bulbs and calla bulbs or corms, $5 per thousand; herbaceous peony, Iris Kaempferri or Germanica, canna, dahlia, and amaryllis bulbs, $10 per thousand; all other bulbs, roots, root stocks, corms, and tubers, which are cultivated for their flowers or foliage, 50 cents per thousand: *Provided*, That all mature mother flowering bulbs imported exclusively for propagating purposes shall be admitted free of duty.

263. Orchids, palms, azaleas, and all other decorative or greenhouse plants and cut flowers, preserved or fresh, 25 per centum ad valorem; lily of the valley pips, tulip, narcissus, begonia, and gloxinia bulbs, $1 per thousand; hyacinth, astilbe, dielytra, and lily of the valley clumps, $2.50 per thousand; lily bulbs and calla bulbs, $5 per thousand; peony, Iris Kaempferri or Germanica, canna, dahlia, and amaryllis bulbs, $10 per thousand; all other bulbs, bulbous roots or corms which are cultivated for their flowers or foliage, 50 cents per thousand.

At once it appears that there are in each of these two paragraphs six separate clauses providing for different rates of duty, while in the corresponding clauses the rates are the same. We are here interested mainly in a comparison of the second clauses, respectively, because, if these tulip bulbs are not dutiable under that clause of paragraph 210, it seems to be conceded that the sixth clause thereof is applicable.

In the earlier paragraph the second clause provided for " lily of the valley pips, tulip, narcissus, begonia, and gloxinia bulbs," while that clause of the paragraph now in force reads " lily of the valley pips, tulips, narcissus, begonia, and gloxinia bulbs." In the earlier statute the word *tulip* is grammatically an adjective modifier of bulbs, while in the later paragraph the word *tulips* is not grammatically an adjective modifier, but is a noun, and the importers' claim here is founded wholly upon this change in the language of the two clauses.

It is unnecessary to cite authorities to the proposition that the fact that the language of a statute is changed ordinarily presumes a legislative intent to correspondingly change preexisting law, and, further, that unless a statute is ambiguous there is no occasion to invoke rules of construction. It must be understood and applied according to the natural import of the language employed. Accompanying this latter rule is another, well recognized, that if construed

in its ordinary meaning and grammatical construction the applica-tion of the statute leads to manifest contradiction of the apparent purpose of the enactment or to absurdity, hardship, or injustice not intended, the courts will, if the same is possible, interpret the lan-guage employed to avoid these consequences. Endlich on Inter-pretation of Statutes (sec. 295) ; United States *v*. Kirby (74 U. S. 482) ; Church of Holy Trinity *v*. United States (143 U. S., 457) ; Lau Ow Bew *v*. United States (144 U. S., 47, 59) ; United States *v*. Riggs (203 U. S., 136) ; Heide *v*. United States (2 Ct. Cust. Appls., 399; T. D. 32166).

The Government here in effect urges that although grammatically construed the statute may warrant the importers' contention, never-theless, in view of the history of the paragraph, its context and spirit, it should not be given that effect, and suggests that the addition of the letter " s " to the word " tulip " in the earlier clause was the result of a typographical error.

It appears that when the tariff bill was first introduced in the House the paragraph of the act of 1913 under consideration was identical with paragraph 263 of the act of 1909, except that the letter " s " was added to tulip. Comparing the paragraph as introduced with the same as finally enacted, we find numerous changes have been made therein; words have been stricken out, others have been inserted or added, a proviso attached, and with respect to the duty rates, synonymous forms of expression have been employed. The only change made in the second clause, it is true, is the use of equiva-lent language for declaring the same rate of duty, but, in view of the fact that the entire paragraph was the subject of such careful consideration and close inspection, we can not believe that the change from *tulip* to *tulips* was overlooked. When it is also con-sidered that the paragraph, as a part of the bill, underwent various reprints in its legislative journey, the conclusion seems irrestible that the letter " s " was purposely introduced and deliberately retained.

Neither are we at all clear that it can be said that the results con-sequent upon enforcing this clause according to its grammatical construction are such as to conflict with the spirit or context of the paragraph, are absurd, unjust, or presumably not intended. Under the earlier paragraph, tulip bulbs fell within the second clause; under the later, they are relegated to the sixth clause and pay one-half the duty formerly assessed thereon and one-half the duty now assessed upon articles within the second clause. Congress may well have thought it a wise policy to change the classification of tulip bulbs in this manner, and as to the wisdom of such policy we have no power to inquire. The context of the paragaph is adapted as well to the one as to the other construction, and it is also consistent

therewith to impose upon tulips the rate of duty that was formerly assessed upon tulip bulbs.

The whole issue and its determination may be summed up as follows: Congress has apparently deliberately substituted tulips, the *noun*, for tulip, the *adjective*, is presumed to have intended to do so, and no sufficient legal reason exists to justify the court in saying such was not the intent. No strained construction should be indulged unless clearly necessary to accomplish the execution of a congressional purpose, and where two constructions are equally probable that one should not be adopted which results in the imposition of the higher tax.

In Breck v. United States (2 Ct. Cust. Appls., 26; T. D. 31576) an analogous question was considered, cases were examined, and, quoting from Endlich on Interpretation of Statutes, it was said: "It is a well-settled rule of construction that the grammatical sense must be adopted, unless there are within the statute cogent reasons indicating a contrary intent upon the part of the lawmakers."

The judgment of the Board of General Appraisers is *reversed*.