QUONG YUEN SHING CO. *v.* UNITED STATES (No. 4365)[1]

United States Court of Customs and Patent Appeals, June 10, 1943.

*Barnes, Richardson & Colburn* (*J. Bradley Colburn, Albert MacC. Barnes*, and *Samuel M. Richardson* of counsel) for appellant.

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

---

[1] C. A. D. 247.

44

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges [2]

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court (First Division) overruling a protest of appellant against the classification by the Collector of Customs at the port of New York of certain merchandise, invoiced as "Ve-tsin," under the provisions of paragraph 5 of the Tariff Act of 1930.

The protest claimed that the merchandise was dutiable at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1558 of said act.

The merchandise consists of a mixture containing 82.15 per centum monosodium glutamate, 16.75 per centum sodium chloride (salt) and 1.10 per centum moisture. It is used for flavoring soups and gravies.

It appears that monosodium glutamate is a chemical salt and a chemical compound; that sodium chloride is also a chemical salt and a chemical compound; that the two were mixed but not compounded.

The involved provisions of the Tariff Act of 1930 read as follows:

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Paragraph 81, though not directly involved, is pertinent to the questions before us and reads as follows:

PAR. 81. Sodium: * * * chloride or salt, in bags, sacks, barrels, or other packages, 11 cents per one hundred pounds; in bulk, 7 cents per one hundred pounds; * * *.

Upon proof that the merchandise involved in the case of *Walter T. Ueland, Quong Yuen Shing & Co.* v. *United States,* 73 Treas. Dec. 90, T. D. 49348, affirmed in 27 C. C. P. A. (Customs) 56, C. A. D. 62, was identical in character with the merchandise here involved, the record in said cited case was incorporated in the record herein.

Appellant offered no evidence other than testimony establishing that the merchandise involved in the incorporated case was the same as the merchandise here involved. The Government introduced the testimony of one witness, Herbert B. Eckweiler, a Gov-

---

[2] JACKSON, Judge, took no part in the consideration or determination of this case.

ernment chemist, and one Andrew J. Patten. The latter, however, gave no testimony relevant to the issues here involved, as the court sustained objections to questions propounded by Government counsel upon matters which it sought to prove.

The correctness of these rulings is not here questioned.

The Government here makes one contention that does not appear to have been made in the incorporated case, viz, that the salt in the involved merchandise exists as an impurity and should therefore be ignored.

However, the Government witness, Eckweiler, in the incorporated case analyzed the merchandise there involved and reported as follows:

The sample is monosodium glutamate mixed with 17.2% sodium chloride. Both are chemical compounds. A little moisture is present.

Upon this point the trial court in the case at bar stated:

There is nothing in this record to show that the admittedly chemical compound, salt, was not artifically added to and mixed with the other admittedly chemical compound, monosodium glutamate to impart to it valuable properties that it did not theretofore possess.

We are of the opinion that there is nothing in the record to justify the Government's contention in this regard, and that upon the whole record it should be held that the involved merchandise consists of a chemical mixture of monosodium glutamate and sodium chloride.

The principal question before us is the proper construction of paragraph 5 of said tariff act.

The contention of appellant is that inasmuch as sodium chloride is specially provided for in paragraph 81 the involved merchandise is excluded from classification under paragraph 5.

This is the same question that was involved and considered by us in the incorporated case, *Walter T. Ueland, Quong Yuen Shing & Co.* v. *United States, supra.* It appears from our per curiam opinion in that case that it was originally decided by us (Judge Bland dissenting and Judge Jackson not participating) that the merchandise there involved was not classifiable under paragraph 5, but should be classified under paragraph 1558 as there claimed, and the judgment of the trial court was reversed.

The Government filed a motion for rehearing and for the first time brought to our attention the case of *United States* v. *Schenker's, Inc.*, 15 Ct. Cust. Appls. 460, T. D. 42645. In said motion it was claimed by the Government that this court had in said case construed paragraph 5 of the Tariff Act of 1922 (which is identical with paragraph 5 of the Tariff Act of 1930) contrary to the construction given paragraph 5 in our opinion, as to which a rehearing was asked, and in its brief upon that motion the Government contended that inasmuch as the Tariff Act of 1930 was enacted after the rendition of said decision,

there existed legislative ratification of judicial decision respecting the construction of paragraph 5, which should be followed by us.

The motion of the Government was granted, and upon rehearing the court found itself equally divided, Judge Jackson not participating, and under the rule applicable in such cases, the aforesaid judgment was affirmed.

It appears from our per curiam opinion in that case that Presiding Judge Garrett and Judge Hatfield adhered to the conclusion originally reached by the majority, Judge Bland adhered to his dissent therefrom, and the writer of this opinion was of the view that the case was governed by the rule of legislative ratification of the judicial interpretation of paragraph 5 of the Tariff Act of 1922 as expressed in the *United States* v. *Schenker's* case, *supra*, Judge Bland also concurred in this view.

After careful consideration the writer of this opinion feels compelled to change his view as expressed in said per curiam opinion with respect to the application of the rule of legislative ratification of judicial interpretation of the provision of said paragraph 5.

The *Schenker's* case involved the dutiable classification of certain "pickling salt" composed of a mixture of common salt, sodium nitrite, and sodium sulphate. 94.65 per centum of the mixture was common salt. The merchandise had been classified by the collector under said paragraph 5 of the Tariff Act of 1922 at 25 per centum ad valorem. The importer in its protest claimed the merchandise was dutiable under paragraph 83 as "chloride or salt."

It appears that the trial court sustained the protest upon the theory that the sodium nitrite and sodium sulphate were impurities in the salt.

Upon appeal we reversed the decision of the trial court. In our opinion, after quoting paragraphs 5 and 83 of said Tariff Act of 1922, we said:

Paragraph 5 provides for all chemical salts and compounds and *combinations* and *mixtures* thereof not specially provided for, and the collector is presumed to have found that the merchandise here was either chemical salts or compounds, or a combination or mixture thereof.

While the quoted language purports to construe said paragraph 5, it appears that our decision was in fact based upon the fact that there was no proof that the sodium nitrite and sodium sulphate were present in the salt as impurities.

In our opinion we stated:

There is nothing to show that these chemical elements were not artifically added to the common salt to impart to it valuable properties that it did not theretofore possess. Paragraph 83 does not provide for compounds or mixtures of chloride or salt with sodium nitrite and sodium sulphate.

If importer had introduced evidence tending to show that this importation was common salt, either as commercially or commonly known, or had by proof

accounted for the presence of sodium nitrite and sodium sulphate therein, a different case would be presented.

It cannot be held, on the record here, that the quantities of sodium nitrite and sodium sulphate in this importation are negligible.

While it is true that in reversing the judgment appealed from we also stated that the merchandise was dutiable as held by the collector, it now appears that neither the construction of paragraph 5 nor a holding that it was dutiable thereunder was necessary to our decision in that case.

The only claim made by the importer before us was that the merchandise was dutiable under paragraph 83, and if not dutiable under that paragraph, and we so held, the judgment of the trial court would have been reversed, and the classification made by the collector would have prevailed had we made no reference in our discussion to paragraph 5.

We think it proper to observe, however, that we are not in accord with the view of appellant's counsel, that in order for the rule of legislative ratification of the construction of a statute by a court to be applicable, similar merchandise under all circumstances must be present in a later case where the rule is invoked.

If, in a case judicially decided, the construction of a statute is necessary, and that statute is thereafter reenacted without change, it is presumed that Congress was aware of such judicial construction and approved the same. *United States* v. *Kawahara*, 15. Ct. Cust. Appls. 231, T. D. 42242.

In the *Schenker's* case, *supra*, the merchandise consisted of a mixture of chemical compounds, one of which was specially provided for. Here the merchandise consists of a mixture of chemical compounds, one of which is specially provided for. Therefore, insofar as paragraph 5 of the Tariff Act of 1922 and paragraph 5 of the Tariff Act of 1930 are concerned, the merchandise involved in the *Schenker's* case was the same as the merchandise in the case at bar, viz, mixtures of chemical compounds. Therefore, had judicial interpretation of section 5 of the Tariff Act of 1922 been necessary upon the point of whether the paragraph includes such mixtures where one or more of the elements of the mixture is specially provided for elsewhere in the act, the rule of legislative adoption of judicial decision would have been applicable here.

We think it proper to observe that in the case at bar the Government makes no contention of legislative ratification of judicial decision as it did upon the rehearing of the *Ueland* case, *supra*, but only that the decision in the *Schenker's* case, *supra*, is controlling here under the doctrine of *stare decisis*.

However, as hereinbefore indicated, a majority of the court is now of the opinion that the rule of legislative ratification of judicial decision does not apply for the reasons hereinbefore stated.

In view of the foregoing the court now adopts so much of the opinion of Presiding Judge Garrett originally rendered in the case of *Walter T. Ueland, Quong Yuen Shing & Co.* v. *United States, supra,* as relates to the construction of paragraph 5 before us. The portion so adopted reads as follows:

\*      \*      \*      \*      \*      \*      \*

The merchandise at bar, however, is not a chemical *compound* in the sense that salt and mono sodium glutamate, its respective constituent compounds, are, but is a *mixture* in which the properties of the respective compounds have not lost their identity, but may be separated. ·

Paragraph 5, *supra*, obviously is broad enough to include such a mixture, and, in our view, it does so, except when one or more of the constituent compounds of the mixture are specially provided for elsewhere. It seems clear to us that the phrase "all the foregoing  \*  \*  \*  not specially provided for" runs to "all chemical salts and compounds," and if there be one such which is specially provided for in some other paragraph, it is thereby removed from paragraph 5 for tariff purposes. Further, we are of the opinion that the phrase "any of the foregoing" taken in connection with the phrase "not specially provided for" excludes mixtures of chemical compounds from the paragraph when one of the compounds of the mixture is elsewhere specially provided for. In other words, the mixtures provided for in paragraph 5, *supra*, include only those mixtures which have constituent compounds, no one of which compounds is itself excluded from the paragraph by a specific provision for it elsewhere in the tariff act.

Common salt is *eo nomine* provided for in paragraph 81 of the Tariff Act of 1930. Under our view, therefore, the mixture at issue, which includes salt as a substantial component part thereof, is excluded from classification under paragraph 5, *supra*.

In giving the paragraph the construction which we have, we have followed the clear grammatical sense of the language used, as that language is arranged, and hence have followed the authorities cited in the brief on behalf of the Government upon this point. *Schneider Bros. & Co.* v. *United States*, 13 Ct. Cust. Appls. 519, T. D. 41392.

In the case of *International Forwarding Co.* v. *United States*, 16 Ct. Cust. Appls. 539, 541, T. D. 43264, we said, *inter alia*:

It is a fundamenal rule in statutory construction that courts should accept the language used in its natural signification and in accordance with its grammatical arrangement; and that unless a statute is ambiguous there is no occasion to resort to rules of construction. *United States* v. *Goldenberg*, 168 U. S. 95. It is equally true, however, that, where a literal construction of a statute leads to an absurdity, the courts will, if possible, so construe the statute as to avoid the absurdity. *Maltus & Ware* v. *United States*, 6 Ct. Cust. Appls. 525, T. D. 36147, and cases cited therein.

The construction which we have given does not lead to an absurdity and no good reason appears why the normal rules of construction should not be followed.

The Government invokes the legislative history of paragraph 5, *supra*, insisting that if it be adopted as a rule of construction, it leads to a conclusion different from that at which we have arrived. Its brief quotes from the Summary of Tariff Information 1929, Vol. 1, page 40, as follows:

CHEMICAL ELEMENTS, SALTS, COMPOUNDS, MEDICINAL PREPARATIONS, COMBINATIONS, ETC., N. S. P. F.

Paragraph 5 is the basket paragraph in Schedule 1. It is one of the more important paragraphs, since nearly all chemicals not otherwise provided for in the tariff act are dutiable thereunder.

The rapid progress in the chemical industry, domestic and foreign, is responsible yearly for many new chemicals of commercial importance, for which no special provision is made in the tariff act. These products if imported are classified for duty under paragraph 5, which also includes a large variety of fine chemicals of relatively high price, not elsewhere mentioned in the act.

We do not find in the foregoing anything which leads us to conclude that Congress, legislating in the light of it, indicated an intent different from that ascribable to it when the statute is normally construed.

The legislative history may be traced back to the Tariff Act of 1922 where, as has been stated, paragraph 5, *supra*, first appeared in its present form. Reference to the Summary of Tariff Information 1920, page 16, used in the preparation of the bill in the House of Representatives, and Summary of Tariff Information 1921, page 31, prepared particularly for the use of the Senate, indicates that the new paragraph was to take the place of numerous paragraphs, many of them *eo nomine* provisions, in the acts of 1909 and 1913. Each of these latter acts carried provisions for all chemical compounds and mixtures of salts not specially provided for, but the arrangements of their language differed slightly from each other, and from the arrangement in paragraph 5, *supra*. We find nothing in the different arrangement, however, which seems to affect the issue here.

It appears that there has been considerable litigation respecting the classification of merchandise of the nature of that at bar under different tariff acts, but the contesting paragraphs have not always been of the same purport, nor have the proportions of the ingredients been always the same. In Abstract 35698 embraced in T. D. 34468, 26 Treas. Dec. 828, 836, a product known as ajinomoto was held by the trial tribunal to be classifiable, under the 1909 tariff act, as a nonenumerated manufactured article, rather than as a prepared vegetable substance, it being there recited that Abstract 25277 embraced in T. D. 31478, 20 Treas. Dec. 636, 647 (in which other prior abstract decisions were referred to) was cited as being "followed."

In the case of *Pacific Trading Co.* v. *United States*, T. D. 45589, 61 Treas. Dec. 835, ajinomoto, composed of 93.60 per centum mono sodium glutamate, 0.90 per centum sodium chloride, and 5.50 per centum moisture was assessed as a nonenumerated manufactured article under paragraph 1459 of the Tariff Act of 1922, and claimed in the protest under paragraph 83 by similitude in use to salt. The United States Customs Court, Third Division, overruled the protest, expressly sustaining the collector's classification.

In the case of *Sun Yuen Hing & Co.* v. *United States*, T. D. 47102, 65 Treas. Dec. 967, ve-tsin, composed of 80.60 per centum mono sodium glutamate, 14.48 per centum sodium chloride, and 4.92 per centum moisture, imported under the Tariff Act of 1930, was classified by the collector under paragraph 5, *supra*. The importer claimed under paragraph 81 of the act by similitude to salt, and alternatively under paragraph 1558, the nonenumerated manufactured provision. The latter claim was upheld by the trial court, First Division.

In the case of *Nippon Co.* v. *United States*, T. D. 47121, 65 Treas. Dec. 1024, the merchandise was referred to as ajinomoto, the proportions of the ingredients being the same as that in the *Pacific Trading Co.* case, *supra*. The classification by the collector and the claims of the importer were substantially the same as those in the *Sun Yuen Hing & Co.* case, *supra*, and the same conclusion was reached by the same division of the trial court.

No one of the above cases was appealed to this court.

In the case of *B. R. Anderson & Co. et al.* v. *United States*, T. D. 48019, 68 Treas. Dec. 736, the classification of ajinomoto was again at issue, and upon the record there presented, the trial court, First Division, Brown, J., dissenting, reversed the position unanimously taken in the *Nippon & Co.* case, *supra*, and held the merchandise classifiable under paragraph 5, *supra*. Appeal was taken to

this court in the name of North Coast Importing Co. et al. We affirmed the judgment of the trial court. *North Coast Importing Co. et al.* v. *United States,* 25 C. C. P. A. (Customs) 182, T. D. 48644.

In its decision in the instant case the trial court points out that in the record of the last above-named case, there was "a stipulation eliminating from consideration the salt (0.90%) contained in the merchandise, as imported."

In this fact lies the distinction between the issue as presented in the *North Coast Importing Co. et al.* (*B. R. Anderson & Co. et al.* in the trial court) case, *supra,* and the case at bar. There salt was not considered. Here the presence in the mixture of a substantial quantity of salt is the feature upon which importers rely.

So far as we can discern, there was no stipulation concerning salt in the other cases cited, *supra,* where the articles were held classifiable as nonenumerated manufactured articles.

Certain cases cited in the brief on behalf of the importers are deemed here pertinent by analogy, although the merchandise was different from that at bar. One of them is *United States* v. *Holland-American Trading Co.,* 4 Ct. Cust. Appls. 336, T. D. 33527 (24 Treas. Dec. 989), where metal polish composed of pulverized silica, alumina, and lime, saturated and mixed with petroleum oil and fat, some of these component parts being "chemical compounds or the result of chemical mixture," was held classifiable as an unenumerated manufactured article rather than as a chemical compound or mixture under the 1909 tariff act. Another is the case of *United States* v. *Kraemer & Co. et al.,* 4 Ct. Cust. Appls. 433, T. D. 33858 (25 Treas. Dec. 408), involving the classification of a powder, used for polishing plate and other metal surfaces, composed of various ingredients, some mineral and some chemical. This court affirmed the decision of the trial tribunal, the here pertinent portion of which is that the merchandise was not classifiable under the provision of the 1909 tariff act for chemical compounds, mixtures and salts.

It is clear—indeed it is conceded—that salt standing alone, although a chemical compound, as found in its natural state, is not classifiable under paragraph 5, *supra,* because it is elsewhere provided for. Being one of the substantial ingredients of the merchandise at bar, we hold, for the reasons given, that the latter does not fall within the paragraph, and not itself being elsewhere provided for, and being produced artificially, it takes classification as an unenumerated manufactured article under paragraph 1558 of the Tariff Act of 1930.

For the reasons stated herein the judgment of the United States Customs Court is *reversed* and the cause is *remanded* for further proceedings in conformity with this decision.

BLAND, Judge, dissenting.

This case is a retrial of the issue presented in *Walter T. Ueland, Quong Yuen Shing & Co.* v. *United States,* 27 C. C. P. A. (Customs) 56, C. A. D. 62. The parties are the same, except that Ueland does not appear as an appellant to this court. The merchandise in this case is identical with the merchandise in that case, except that it was a different importation.

In the *Ueland* case, *supra,* originally decided by this court November 28, 1938, (which opinion was not published owing to the fact that a rehearing was granted and the decision below affirmed because the members of this court were evenly divided) I dissented, and since that dissent was not published, I shall state in substance what I said there and in addition discuss other phases of the case not therein mentioned.

I can see no possible logical basis for the majority's construction of paragraph 5. On the main question of interpreting the paragraph, while the majority state that they are giving it the meaning indicated by "the clear grammatical sense of the language used," it is my opinion that the construction does not give the language used its plain meaning but that it is a strained and unjustified construction which produces an anomalous result and which, in my judgment, thwarts the purpose Congress had in mind when it inserted this provision in the Tariff Act of 1922 as the basket provision to take care of many chemicals and related products provided for in many different places in previous acts.

As I read the paragraph, it contains the following elements:

1. chemical elements
2. all chemical salts and compounds
3. all medicinal preparations
4. and all combinations and mixtures of any of the foregoing. Following these specific provisions, Congress added, "all the foregoing obtained naturally or artificially and not specially provided for." The Tariff Commission explained why it was necessary to add "obtained naturally or artificially," and we are not here concerned with that language. The language "all the foregoing * * * not specially provided for" means that if a chemical element is specially provided for, it of course does not go into paragraph 5, and the same is true of the other three items. If the mixture is specially provided for, as a mixture, it does not go into the paragraph, but if not specially provided for, as a mixture, and it is a mixture of "any of the foregoing," it falls within the paragraph.

The instant importation is admittedly a physical mixture of two chemical compounds, one of which is specially provided for under paragraph 81. The instant importation is a mixture, not specially provided for, which contains one "of the foregoing" and falls within the fourth provision, "all combinations and mixtures of *any* of" these. Since the mixture was not specially provided for elsewhere in the act, it was necessary for the collector to classify it either under paragraph 5 or under the nonenumerated paragraph, 1558.

The collector did, in the instant case, what he did in the *Ueland* case, *supra*, and in the *North Coast Importing Co.* case, *supra*, and what all the collectors throughout the United States have done (as far as I am advised) since paragraph 5 became the law in 1922. This exact issue was not presented in the *North Coast Importing Co.* case, but we there sustained the action of the collector in assessing the merchandise under paragraph 5. In fact, no argument had ever been presented to any court, so far as I know, that, if one chemical element was specially provided for, the mixture containing one or more chemical elements which were not provided for would be excluded from

the paragraph, until that issue was presented in the case of *United States* v. *Schenker's, Inc., supra.* Just how the majority can waive this decision aside so summarily is beyond my comprehension.

This exact point was presented to this court in 1928 in the *Schenker's* case upon a protest which claimed the merchandise dutiable, as does the instant protest, as a nonenumerated manufactured article. This court there said:

Paragraph 5 provides for all chemical salts and compounds and all *combinations* and *mixtures* thereof not specially provided for, and the collector is presumed to have found that the merchandise here was either chemical salts or compounds, or a combination or mixture thereof.

Importer has tendered no proof that the importation is not as classified by the collector. It argues that the small quantities of sodium nitrite and sodium sulphate, aggregating 5.35 per centum, should be treated as negligible impurities and disregarded, claiming it is probable they occurred naturally in the importation. It also argues that as sodium chloride, sodium nitrite, and sodium sulphate are each *eo nomine* provided for in paragraph 83, and that paragraph 5 covers only the things therein named that are not specially provided for, the importation can not be classified under paragraph 5. [Italics quoted.]

We there expressly affirmed the collector's action in assessing the mixture, the components of which were specially provided for elsewhere, with duty under paragraph 5.

There is a second and very important feature of the decision by the majority in this case which I think is so patently erroneous as to require considerable discussion. This phase of the case relates to the doctrine of legislative approval of judicial construction. The majority have made some new law when they say the following:

*If,* in a case judicially decided, *the construction of a statute is necessary,* and that statute is thereafter reenacted without change, it is presumed that Congress was aware of such judicial construction and approved the same. *United States* v. *Kawahara,* 15 Ct. Cust. Appls. 231, T. D. 42242.

I italicize the phrase, "If * * * the construction of a statute is necessary." The authority cited by the majority, the *Kawahara* case, does not hold that the doctrine does not apply if the decision was unnecessary, and I have looked at every decision I can find, by every court in this land, having any bearing upon this question, and in no instance has any court ever stated that the doctrine does not apply where a court construed the language under circumstances which did not require its construction. I have found no decision that refers to language used by a court in construing a statute before it as being *obiter dictum.* But if the construction were *obiter,* it would make no more difference than if the decision was erroneous. If Congress can give its approval, in the manner stated, of a patently erroneous holding, it surely can do the same with one that was not necessary to a disposal of the issues involved.

The majority hold that a case of legislative adoption of judicial construction would be made out here if the court had been justified

in construing the paragraph in the *Schenker's* case. The record in that case discloses that when the court heard the argument and decided the case, it had before it the protest claim of the importer that the merchandise was dutiable as a nonenumerated article. Before the court could go to the nonenumerated paragraph, it had to hold that the merchandise was not enumerated elsewhere. It was vitally necessary, therefore, for the court to determine that it was dutiable where it was assessed and, in doing so, it had to construe the paragraph. True enough, the court did not belabor the issue, which the majority here stress, no doubt for the reason that the plain language of the paragraph was all the answer necessary to the contention made by the importer there. It was the Government that appealed in that case, and unless the importer desired a lower rate of duty than that which the court had held applicable, it was not necessary for the importer to appeal and ask for a 20 per centum duty as a nonenumerated article. If this court had concluded that the assessment was wrong, it could have reversed the trial court and remanded the case so as to have brought about the proper assessment. *United States* v. *Strauss & Co.*, 3 Ct. Cust. Appls. 180, T. D. 32464; *United States* v. *Paramount Publix Corp.*, 22 C. C. P. A. (Customs) 452, T. D. 47453; *United States* v. *Astra Bentwood Furniture Co.*, 25 C. C. P. A. (Customs) 340, T. D. 49434.

When the 1930 Tariff Act was passed, Congress had before it the Summary of Tariff Information, 1939, where, on page 53, the Tariff Commission, in discussing decisions relating to said paragraph 5, stated:

\* \* \*. *Pickling salt*, composed of common salt 94.65 per cent sodium nitrite and sodium sulphate was held dutiable hereunder. With no proof to that effect, held error to conclude as matter of law that the sodium nitrite and sodium sulphate were not artificially mixed in the commodity but were found there naturally. (15 Ct. Cust. Appls. 460.) [Italics quoted.]

Congress was definitely told there that this court had, in the *Schenker's* case, held pickling salt dutiable under said paragraph 5 of the Tariff Act of 1922. Congress, with this knowledge before it (although if the decision had not been called to its attention, it is presumed to have known of it) reenacted the same paragraph using language identical with that of the Tariff Act of 1922. Is it supposable that before Congress can be said to give its approval of judicial construction, the framers of the law must wade through the decisions and holdings on the subject matter and determine precisely whether the court could have decided the case without construing the provision? To so conclude would be contrary to everything I understand about the doctrine.

Under the present majority decision (and the majority admit that it would be a clear case of legislative ratification of judicial holding if the construction of the paragraph had been necessary in the *Schen-*

*ker's* case), litigants will hereafter tax their ingenuity to make it appear, in cases like the one at bar, that Congress, having been informed of a judicial holding, ignored said holding because it concluded, for some reason, that the court had no business construing the provision in the first place.

It is unfortunate that the Government did not cite the *Schenker's* case until it did so in its petition for rehearing in the *Ueland* case, *supra*, and that it never did call our attention to the fact that that decision was pointed out to Congress when it enacted the Tariff Act of 1930. In the instant case, the Government's counsel states that "whether Congress gave legislative approval to the holding in" the *Schenker's* case "is not particularly germane" and that "the decision controls here under the principle of *stare decisis*, rather than under the doctrine of legislative ratification." I am glad that the majority did not express any approval of this unusual contention. I think both doctrines apply. The doctrine of legislative approval applies with compelling force in a case like the present one, regardless of whether or not that decision is *stare decisis* of the instant issue. It seems obvious to me that the failure of Government counsel to point out to the court that the *Schenker's* case was called to the attention of Congress was due to this strange notion which counsel had with respect to the applicability of the two doctrines.

It is interesting to note that in the *North Coast Importing Co.* case, *supra*, merchandise which I assume was identical with that at bar was before the court, and the importer raised the question of legislative approval of long-continued administrative practice. This court, in an opinion by the same judge who speaks for the majority in the instant case, conceded that there had been a long-continued administrative practice, but pointed out that on June 5, prior to the enactment of the Tariff Act on June 17, 1930, Congress had been informed by a published Treasury Decision, T. D. 44074, that this practice had been changed. Thereupon this court held that when Congress enacted the Tariff Act of 1930, it had in mind that merchandise like that involved there, and involved here, was dutiable under said paragraph 5 of the Tariff Act of 1930. We there said:

> The Tariff Act of 1930 was enacted on June 17, 1930, and therefore it appears that Congress, before its enactment, presumptively had knowledge that the Treasury Department was of the opinion that merchandise of the character here involved *should be classified under paragraph 5 of the Tariff Act of 1922.*
>
> In view of this fact we do not think that it may be said that Congress, in enacting paragraph 5 of the Tariff Act of 1930, intended to recognize and affirm the administrative practice, which apparently had prevailed for many years, in classifying merchandise such as is here involved as a nonenumerated manufacture. [Italics mine.]

True enough, the issue pressed by the importer in that case involved the contention that a food product could not fall within said chemical

paragraph 5, but we held there, and it was controlling of our decision, that when Congress enacted the paragraph *it had before it the information that such merchandise was to be classified under paragraph 5*. This is an additional reason why we should not now hold that the instant merchandise is not the kind of mixture provided for in the paragraph.

It seems to me that, even from the viewpoint of the majority, this is a p_oper place to make application of the principle announced in *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T. D. 40941. There, upon reconsideration of an issue previously decided by the court and well understood and acquiesced in by all concerned, this court made the following observation:

If the question before the court, in the two cases above cited, were before us now, for the first time, under the present statement of facts, we might be inclined to give serious consideration to the contention that the words "not the separated fibers thereof" explained what Congress meant when it said "in' their natural state," and that they did not intend to exclude from the paragraph manufactures of straw which were colored. These decisions have been followed by those administering recent tariff legislation, and Congress, in the manufactures of straw paragraph of the Tariff Act of 1922, has used language identical with that used in the paragraph relating to the same subject matter in the act of 1913, notwithstanding the decisions of this court.

Congress, by such reenactment, has given approval of the interpretation put upon the clause by this court. *United States* v. *Post & Co.*, 3 Ct. Cust. Appls. 260, T. D. 32568.

If it was conceded that these decisions were erroneous, we believe it would be harmful rather than helpful to make any change, at this time, in our former rulings on this question. The courts, and this court especially in passing upon close questions of construction in tariff legislation, have stressed the importance of uniformity of decision and of settled and well understood administrative practice. The persuasiveness of the fact that a position, technically more correct, might be arrived at by the consideration of fine distinctions when reviewed under a new statement of facts, must yield to the advantages to be derived by all parties concerned from a policy affecting the levying of customs duties, which is well understood and acquiesced in. *Ulmann* v. *United States*, 5 Ct. Cust. Appls. 357, T. D. 34551; *United States* v. *Baruch*, 223 U. S. 191; *Goussios & Co.* v. *United States*, 2 Ct. Cust. Appls, 317, T. D. 32051.

I regard the decision of the majority as a very important one, and I think the lower court, in very apt language, properly interpreted the paragraph and that the majority interpretation of it will lead inevitably to the destruction of the "mixtures" provision therein, since it will be an easy matter in most instances to mix the products with some harmless chemical element or chemical compound so as to hereafter take advantage of the strained construction given to the paragraph by the majority. The Government's brief points out that if the paragraph is construed as the majority construe it, mixtures containing sugar or mineral water (sugar and mineral water being specially provided for) would be excluded from the paragraph. It seems so clear as to require no further discussion, that Congress never in-

tended that the purpose of this important basket paragraph should be evaded in the manner suggested.

I think the decision appealed from should be affirmed.