# ROTHSCHILD *v.* UNITED STATES.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 59. Argued October 31, November 1, 1900.—Decided December 17, 1900.

It is the meaning of the tariff act of July 24, 1897, to subject to different rates of duty the leaves of tobacco suitable for cigar wrappers and those not suitable when mixed in the same commercial bale or package.

It is the meaning of said act to subject to the duty of one dollar and eighty-five cents per pound the leaves of tobacco suitable for cigar wrappers intermingled in the bales or packages of tobacco (unstemmed) of the description which, in their entirety at the date of the enactment, were commercially known in this country as "filler tobacco," and bought and sold by that name, notwithstanding such leaves constitute less than fifteen per centum of the contents.

THIS case is here on certificate of the Court of Appeals of the Second Circuit. The case went to that court by appeal from the Circuit Court for the Southern District of New York which reversed a decision of the board of general appraisers. 87 Fed. Rep. 798.

The statement of facts made by the Circuit Court of Appeals is as follows:

"The appellant imported from San Domingo into the port of New York in September, 1897, certain bales of unstemmed leaf

tobacco, the product of San Domingo, in which bales there was mixed or packed with filler tobacco less than four per centum of leaves suitable for wrappers. The collector of the port assessed duty upon the leaves of filler tobacco in each bale at the rate of thirty-five cents per pound, and upon the leaves suitable for wrapper at one dollar and eighty-five cents per pound, assuming to do so conformably with the provisions of the tariff act of July 24, 1897, (Schedule F; 213, 214,) imposing duty on wrapper and filler tobacco as follows : ' Par. 213. Wrapper tobacco and filler tobacco when mixed or packed with more than fifteen per centum of wrapper tobacco, and all leaf tobacco the product of two or more countries or dependencies, when mixed or packed together, if unstemmed, one dollar and eighty-five cents per pound; if stemmed, two dollars and fifty cents per pound; filler tobacco not specially provided for in this act, if unstemmed, thirty-five cents per pound ; if stemmed, fifty cents per pound.' ' Par. 214. The term wrapper tobacco as used in this act means that quality of leaf tobacco which is suitable for cigar wrappers, and the term filler tobacco means all other leaf tobacco.' "

The following questions are propounded :

" 1. Is it the meaning of the tariff act of July 24, 1897, to subject to different rates of duty the leaves of tobacco suitable for cigar wrappers and those not suitable when mixed in the same commercial bale or package ?

" 2. Is it the meaning of said act to subject to the duty of one dollar and eighty-five cents per pound the leaves of tobacco suitable for cigar wrappers intermingled in the bales or packages of tobacco (unstemmed) of the description which, in their entirety at the date of the enactment, were commercially known in this country as ' filler tobacco,' and bought and sold by that name, notwithstanding such leaves constitute less than fifteen per centum of the contents ? "

*Mr. E. R. Gunby* and *Mr. H. T. Cookinham* for Rothschild.

*Mr. John S. Wise* for the United States.

Mr. Justice McKenna, after stating the case, delivered the opinion of the court.

In paragraph 214, the statute defines wrapper tobacco to be that quality of leaf tobacco which is suitable for cigar wrappers, and filler tobacco to be all other leaf tobacco. Paraphrasing the paragraph and paragraph 214, Judge Lacombe classified the tobacco, and assigned duty as follows:

" A duty of 35 cents per pound shall be paid on (A) all leaf tobacco not suitable for cigar wrappers and not otherwise provided for.

" A duty of one dollar and eighty-five cents per pound shall be paid on—

"(A) All leaf tobacco of any kind, and wherever grown, which may be packed or mixed with any other leaf tobacco, which other tobacco is the product of any other country or dependency.

" (B) All leaf tobacco not suitable for cigar wrappers, which shall be found to be mixed or packed with more than fifteen per cent of tobacco which is suitable for cigar wrappers.

" (C) All leaf tobacco suitable for cigar wrappers."

To this classification the appellants oppose that of the board of appraisers, as follows:

" First. Wrapper tobacco.

" Second. Filler tobacco mixed or packed with more than 15 per cent of wrapper tobacco.

" Third. All other *filler* tobacco."

If the classification of Judge Lacombe is correct the questions certified should be answered in the affirmative ; if the classification of the board of appraisers is correct they should be answered in the negative.

The language and arrangement of paragraph 213 supports Judge Lacombe. Regarding the language of the paragraph alone, it requires some ingenuity to create ambiguity. Dealing with wrapper tobacco, the paragraph provides, " wrapper tobacco . . . $1.85 per lb." That is all unstemmed wrapper tobacco. There is no limitation or exception whatever. Dealing with filler tobacco, the paragraph provides, " filler tobacco,

when mixed or packed with more than 15% of wrapper tobacco, if unstemmed, $1.85 per lb.; if stemmed, $2.00 per lb.; filler tobacco not specially provided for in this act, if unstemmed, 35 cts. per lb.; if stemmed, 50 cts. per lb." In other words, so mixed, and as it is stemmed or unstemmed, $2.00 or $1.85 per lb. Filler not so mixed, as it is stemmed or unstemmed, 50 cts. or 35 cts. per lb. But all wrapper tobacco is dutiable at least at $1.85. There is no condition except being stemmed or unstemmed that excepts any part of it or affects the rate upon it. And all filler tobacco is dutiable, but not all at the same rate. There is a condition which affects the rate. That condition is to be mixed with wrapper tobacco. The statute deals with each kind of tobacco separately. It does not qualify wrapper; it does qualify filler—mix wrapper with filler to the extent of more than 15 per cent and the wrapper does not become dutiable as filler—but filler becomes dutiable as wrapper—the mixture becomes in legal effect wrapper, and is dutiable at the same rate.

The appellants contest this interpretation, and contend that wrapper so mixed with filler, by the very terms of the statute escapes duty or would escape duty, " except that it falls under the last clause of the statute and is to be classified as filler tobacco, not specially provided for in this act." If this contention is justified, it would seem as if wrapper tobacco becomes filler even by name and the provisions of the statute are reversed, and their care to make wrapper dutiable and prevent and penalize evasions of the duty becomes a means of either exempting fifteen per cent of it from duty or making it dutiable only as filler.

Considerations outside of the statute are, however, urged as tests of its meaning, and two propositions are advanced which, it is claimed, Congress must be presumed to have known and to which it addressed its legislation.

These are, (1) that in commerce and among dealers in leaf tobacco the bale is the unit; (2) there is in bales of wrapper a certain amount of filler, and in filler bales there may be a small per cent of wrapper, but in trade it is not recognized. It is therefore contended (and we quote counsel) " that the words

'wrapper tobacco' in this section (213) have reference to the commercial terms 'wrapper tobacco,' meaning thereby bales of tobacco known as wrapper, although in every bale there is a quantity of tobacco not suitable for wrapper." That is not the tobacco as such, but the form of its importation determines the duty. The bale is the unit, and the unit must always be regarded. The different kinds of tobacco cannot be separated; they mingle in the unit bale as (the illustration is) different percentages of blood mingle in an animal, and by holding in mind that the bale is the unit, it will be seen that wrapper tobacco (fifteen per cent or less) cannot be " segregated and assessable as such any more logically than could the fifteen per cent of Holstein blood in an eighty-five per cent Ayreshire cow."

But the difficulty is not holding in mind the idea that the bale is the unit, but in accepting it. To accept it we should have to impose it upon the statute. It is certainly not there by expression, and it is not new. It was contended for under the act of 1883 and supported by about the same arguments upon which it is now attempted to be supported. It was rejected in *Falk* v. *Robertson*, 137 U. S. 225, in which the leaf and not the bale was decided to be the unit, and the act of 1883 dealt with percentages as much as the act of 1897. The act of 1883 provided that "leaf tobacco of which eighty-five per cent is of the requisite size and of the necessary fineness of texture to be suitable for wrappers, and of which more than one hundred leaves are required to weigh a pound, if not stemmed, seventy-five cents per pound; if stemmed, one dollar per pound. All other tobacco in leaf, unmanufactured, and not stemmed, thirty-five cents per pound."

But it is claimed that *Falk* v. *Robertson* is distinguishable from the case at the bar in that the different kinds of tobacco were not mingled, but were carefully separated and distinguishable in quantity and quality. Upon principle we think the difference does not distinguish the case from that at bar. The contention is besides answered by *Erhardt* v. *Schroeder*, 155 U. S. 124, 133. To the claims of the parties — one that the bale was the unit — the other that the different kinds of tobacco were, the court, by Mr. Justice Shiras, said :

"The proper answer to this question seems to depend upon the particular circumstances of a given case.

\*      \*      \*      \*      \*      \*      \*      \*

"If, then, a bale or other separate and concrete quantity of leaf tobacco contained only leaves of such uniformity of character as to be, in their collective form, of one class, the bale, or other separate collection, would be the unit contemplated in the percentage and weight tests of paragraph 246. On the other hand, if the bale contained tobacco of two classes, the unit would be the ascertained quantity of either class."

It is conceded that in *Erhardt* v. *Schroeder* it was decided that the bale was not the unit, but it is claimed that the decision was based upon the fact that the "whole importation was wrapper, and it made no difference what the unit was as the result would be the same if the wrapper tobacco in every bale was eighty-five per cent." We think not. Tobacco of different kinds in one bale was respectively assessed at seventy-five cents and thirty-five cents a pound. The tobacco in the other bales was assessed at seventy-five cents a pound. The claim of the importers was that it all should have been assessed at thirty-five cents, and in passing on the diverse contentions of the parties it was decided that the statute did not make an inflexible unit. What the unit would be, it was said, would depend upon the "particular circumstances of a given case." And speaking of the bale as such unit the court used the language we have already quoted.

Succeeding the act of 1883 came the act of 1890, 26 Stat. c. 1244. Paragraph 242 provided as follows:

"Leaf tobacco, suitable for cigar wrappers, if not stemmed, $2 per lb. Provided, That if any portion of any tobacco imported in any bale, box or package, or in bulk, shall be suitable for cigar wrappers, the entire quantity of tobacco contained in such bale, box or package, or bulk, shall be dutiable; if not stemmed, at $2 per lb.; if stemmed, at $2.75 per lb.

"All other tobacco in leaf unmanufactured and not stemmed, 35c. per lb.; if stemmed, 50c. per lb."

This language is seemingly very explicit as to the duties on the different kinds of tobacco, and very unambiguous as to the

effect of mingling them in bale, bag, package or bulk. And Circuit Judge Coxe pronounced it so in *Stachelberg et al. v. United States*, 72 Fed. Rep. 50.

We are, however, referred to an opinion of the board of appraisers, in the matter of the protest of Emilio Pons & Co., which, it is claimed, was an administrative interpretation of such paragraph, which not only determined its meaning but the meaning of the provisions of subsequent laws.

The importation passed upon was of Havana tobacco, and the conclusions of the board were very disputable even on the specific facts of that case. The board found there was well defined difference between Havana wrapper and filler and that in the best selected grades of each there was from five to fifteen per cent of the other, and that filler bales having less than fifteen per cent of wrapper were not recognized in trade as filler having any portion suitable for wrappers; over that percentage the bales were known as part wrapper, and also known as self-working bales. From these facts the board concluded that less than fifteen per cent was not an appreciable quantity, and made the following special finding of facts:

"(1) That the tobacco is semi-Vuelta, uniform in quality, length and color, and is of the kind known in trade as Havana filler tobacco, leaf, unstemmed.

"(2) That it contains from 10 to 15 per cent of leaves that can be used for wrappers for inferior cigars, but no portion thereof is of the quality known as wrapper tobacco.

"(3) That it is of a kind used exclusively by larger manufacturers of cigars as fillers for cigars.

"We hold that, within the meaning of the statute, there is no portion of the tobacco covered by this protest suitable for wrappers for cigars.

"The protest is sustained."

Counsel for the appellants say that the reasoning and spirit of this decision was accepted by the Treasury Department, but that its percentage was rejected. And well it might have been. The act which expressed in clear and definite words that the effect of mixing "any portion" of wrapper tobacco with filler tobacco in an importation was to make "the entire quantity"

dutiable as wrapper, was interpreted to admit at filler duty fifteen per cent of wrapper, a fraction less than was necessary to make a working bale, a bale with enough wrapper to use up the filler. This was a very liberal application of the maxim which expresses the disregard of the law for small things. If Congress did not intend to penalize an accidental or inevitable mixing of some leaves of wrapper with filler, it certainly did not intend to defeat or weaken its legislation. Giving the bale as a unit, as contended for; giving a fraction less than fifteen per cent of its contents, though wrapper to be admitted at filler duty, how much wrapper would be otherwise imported?

However, the decision was rendered; how far was it a factor in determining the provisions of the act of August 27, 1894, (the Wilson act) and that of 1897, the act under consideration, must be passed upon.

Of the Wilson act we need only quote the following:

"Wrapper tobacco, unstemmed, imported in any bale, box, package or in bulk, $1.50 per lb.; if stemmed, $2.25 per lb.

"Filler tobacco, unstemmed, imported in any bale, box, package or in bulk, 35c. per lb. if stemmed 50c. per lb. Provided, that the term wrapper tobacco, whenever used in this act, shall be taken to mean the quality of leaf tobacco known commercially as wrapper tobacco.

"Provided further: That the term filler, whenever used in this act, shall be taken to mean all leaf tobacco unmanufactured, not commercially known as wrapper tobacco.

\*     \*     \*     \*     \*·     \*     \*     \*

"Provided further: That if any bale, box, package or bulk of leaf tobacco, of uniform quality, contains exceeding 15% thereof of leaves, suitable in color, fineness of texture and size for wrappers for cigars, then the entire contents of such bale, box, package or bulk shall be subject to the same duty as wrapper tobacco."

As it will be observed, the act was more circumstantial than the act of 1890. It defines wrapper tobacco as meaning that "quality of leaf tobacco *known commercially as wrapper*." And filler to mean "all leaf tobacco unmanufactured, not *commercially known* as wrapper tobacco." It did not provide, as the act

of 1890 provided, if any portion of any tobacco imported be wrapper the entire quantity should be dutiable as wrapper. It fixed the wrapper which would have that effect at an amount exceeding fifteen per cent of leaves in any bale, box, package or bulk of leaf tobacco of *uniform quality* . . . *suitable* in *color*, fineness *of texture and size*, for cigars.

If anything can be inferred from the qualifications which we have put in italics as connecting the act with the decision of the board of appraisers in the *Pons* case the inference must be dropped as to the act of 1897. All those qualifications are omitted except that the quantity of wrapper tobacco in the importation which will affect with wrapper duty the filler with which it is mixed is retained. But it is retained in such context, as we have already said, so as not to exempt any wrapper tobacco from duty as such, though it may charge filler tobacco with wrapper duty. It would make this opinion too long to analyze the Wilson act. We are inclined to think it should be interpreted as we have interpreted the act of 1897. But if we concede the construction of the appellants, it can only come from the qualifying words we have indicated. If their presence in the Wilson act determines the construction contended for, their absence from the act of 1897 determines against the construction of the latter act contended for, as it is also determined against by the character of the act. It precludes the view that any wrapper tobacco is to be admitted to importation under filler duty. And why should it be? There is nothing in the trade conditions urged upon our consideration which requires it. The mixing of the tobacco which may accidentally or necessarily attend the manner of picking and packing is provided for, and the indulgence of the statute so clearly expressed and defined should not be extended to exempt any portion of either tobacco from its full duty by assuming or accepting the arbitrary idea that the statute addressed itself to bales of tobacco and not to the tobacco in the bales.

*We therefore answer the questions certified by the Circuit Court of Appeals in the affirmative.*