**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gregory WILLIAMS, Defendant–
Appellant.**

**No. 92–2473.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 13, 1993.

Decided Feb. 4, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 4, 1994.

---

**56.** This power is included in § 1302 by the incorporation of § 704(5). *See* 11 U.S.C. §§ 704(5) & 1302(b)(1).

**57.** 11 U.S.C. § 1322(a)(3).

Lynn A. Helland (argued and briefed), Office of the U.S. Atty., Detroit, MI, for plaintiff-appellee.

Margaret Raben (argued and briefed), Dise & Gurewitz, Detroit, MI, for defendant-appellant.

Before: NORRIS and SILER, Circuit Judges; and OAKES, Senior Circuit Judge.*

OAKES, Senior Circuit Judge.

This appeal presents a question of statutory interpretation: does a district court have authority to revoke probation for pre-probation conduct? We conclude that a district court does have authority to revoke probation for pre-probation conduct, including the pre-probation conduct of a paroled convict. We therefore affirm the decision of the District Court.

## I. BACKGROUND

On April 4, 1985, Gregory Williams pleaded guilty in the United States District Court for the Eastern District of Michigan to mail fraud, credit card fraud, forgery, and possession of stolen mail (the "1985 convictions").

---

* The Honorable James L. Oakes, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

He was sentenced by Judge Horace Gilmore on August 7, 1985 to two concurrent four-year terms of imprisonment on the mail fraud and credit card fraud counts. On the forgery and possession of stolen mail counts, Judge Gilmore sentenced Williams to two concurrent five-year periods of probation, to run consecutive to the four-year terms of imprisonment. Judge Gilmore also ordered Williams to pay over $400,000 in restitution to the primary victims of his mail fraud, Gloria McKay and her family.

On September 24, 1987, Williams was paroled. Williams' custodial sentence expired on March 24, 1989. At that time, Williams began to serve his probation.

On October 19, 1989, Williams was indicted on new charges of fraud for conduct occurring during his parole and before his probation. On September 5, 1990, Williams pleaded guilty to charges including mail fraud, credit card fraud, making a false statement to his probation officer, and money laundering (the "1990 convictions").[1]

The probation revocation proceedings that ultimately produced this appeal began on December 14, 1989. On November 20, 1992, Judge Gilmore found that Williams had violated the conditions of his probation by virtue of his pre-probation offenses. Judge Gilmore revoked Williams' probation and sentenced him to ten years imprisonment on the forgery count of the 1985 convictions. Judge Gilmore suspended Williams' sentence for the possession of stolen mail count. Williams filed a timely notice of appeal on November 30, 1992.

## II. DISCUSSION

█ This appeal presents the question whether 18 U.S.C. § 3651 authorizes district courts to revoke probation for pre-probation conduct.

1. On November 30, 1992, three of Williams' convictions were affirmed on appeal. One conviction—for mail fraud—was remanded for repleading.

2. 18 U.S.C. § 3565 provides that "[i]f the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pur-

### A. 18 U.S.C. § 3651

A district court's authority to revoke probation is now governed by 18 U.S.C. § 3565 (1988).[2] The offenses for which Williams was sentenced to probation, however, were committed before November 1, 1986, the effective date of Section 3565. Accordingly, the District Court's authority to revoke Williams' probation is governed by 18 U.S.C. § 3651 (1988) (repealed by Pub.L. 98–473, § 212, 98 Stat. 1987 (1984)). *See United States v. James,* 848 F.2d 160, 162 n. 2 (11th Cir.1988). Section 3651 provides that:

[t]he court may revoke or modify any condition of probation, or may change the period of probation. The period of probation, together with any extension thereof, shall not exceed five years.

18 U.S.C. § 3651. This provision appears to give courts broad discretion to revoke, modify any condition of, or change the period of, probation so long as the period of probation is not changed to exceed five years. Nothing in the language of this statute limits the authority of a court to revoke probation to conduct occurring within the period of probation.

Williams argues that 18 U.S.C. § 3653 (1988) (repealed by Pub.L. 98–473, § 212, 98 Stat.1987 (1984)) limits a court's authority to revoke probation under Section 3651. Section 3653 provides:

[a]t any time within the probation period or within the maximum probation period permitted by section 3651 ... the court ... may issue a warrant for [the probationer's] arrest for violation of probation occurring during the probation period.

18 U.S.C. § 3653. Read literally, this section appears to limit the authority of a court to issue a warrant for a probationer's arrest to probation violations *occurring during the probation period.* Thus, while Section 3651 appears to authorize a court to revoke proba-

suant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent they are applicable ... revoke the sentence of probation and impose any other sentence that was available under subchapter A at the time of the initial sentencing."

tion for pre-probation conduct, a literal interpretation of Section 3653 suggests that a court may not issue a warrant for arrest for pre-probation conduct. Williams argues that if Congress intended to authorize courts to revoke probation for pre-probation conduct, Congress would have authorized courts to issue warrants for arrest for pre-probation conduct. Williams further argues that because Congress did not authorize district courts to issue arrest warrants for conduct not occurring within the period of probation, Congress did not intend district courts to have authority to revoke probation for pre-probation conduct. *See* Williams' Brief at 4–10.

Arguably, the fact that 18 U.S.C. § 3653 limits the authority of district courts to issue warrants for violation of probation to violations of probation occurring during the probation period introduces a certain ambiguity into the meaning of 18 U.S.C. § 3651. *See United States v. Ross*, 503 F.2d 940, 943 (5th Cir.1974) (recognizing a "certain superficial, if semantic, appeal" of, but rejecting, the argument that the language of 18 U.S.C. § 3653 limits judicial authority under 18 U.S.C. § 3651 to revoke probation for pre-probation conduct). It should be stressed, however, just how limited this arguable ambiguity is. For example, where an incarcerated defendant commits a violation of the terms of his or her probation there is no need for a court to issue a warrant for the convict's arrest—the convict is already in custody. The fact that Congress has not authorized a court to issue a warrant for an incarcerated convict, therefore, should not be taken to imply that a court has no authority to revoke probation for the pre-probation conduct of an incarcerated convict. Similarly, a paroled convict is still, in a legal, if not physical, sense, "in custody." *See Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (parole is a form of custody for purposes of a habeas corpus petition); *DePompei v. Ohio Adult Parole Authority*, 999 F.2d 138, 140 (6th Cir.1993). Warrants for the retaking of a parolee are to be issued by the Parole Commission, not the district courts. *See* 18 U.S.C. § 4213 (1988). The fact that Congress has given the Parole Commission, rather than the district courts, power to issue warrants to retake parolees seems to follow more from the fact that a parolee remains in custody of the executive than from the supposition that Congress did not intend district courts to have authority to revoke probation for pre-probation conduct.[3]

The only remaining ambiguity arguably introduced by Section 3653, therefore, is the case of a convict, whether incarcerated or paroled, who violates the terms of probation before the probation period begins but whose violation does not come to the attention of the court until after the convict has begun probation. This arguable ambiguity suggests at most that Congress intended courts to have authority to revoke probation for the pre-probation conduct of incarcerated or paroled convicts whose probation violations are discovered *before* the probation period began but not where the conduct is discovered *after* the probation period began. We find it extremely unlikely that Congress intended such a limitation on the authority of a court to revoke probation to be inferred from this arguable limitation on the power of the court to issue warrants for the arrest of a probation violator.[4] Rather than identifying an ambiguity, Williams' argument seems to us to constitute an application of " 'ingenuity to create ambiguity' that simply does not exist in this statute." *United States v. Thompson/Center Arms Co.*, —— U.S. ——, ——, 112 S.Ct. 2102, 2113, 119 L.Ed.2d 308 (1992) (White, J., dissenting) (quoting *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116,

---

**3.** A paroled convict is still, as a matter of law, "in custody," and continues to serve the "custodial term" of his or her sentence. Parole does not "free" a convict. Further, a convict's probationary sentence begins not with parole but after a paroled defendant has "served" the remainder of his or her "custodial" sentence. *Anderson v. Corall*, 263 U.S. 193, 196, 44 S.Ct. 43, 44, 68 L.Ed. 247 (1923) ("While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term.... While this is an amelioration of punishment, it is in legal effect imprisonment.").

**4.** Our conclusion is bolstered by the fact that Congress has replaced 18 U.S.C. §§ 3651 and 3653 with 18 U.S.C. § 3565. That section clearly grants courts authority to revoke probation for pre-probationary conduct.

3121, 92 L.Ed.2d 483 (1986) (quoting *Rothschild & Brother v. United States,* 179 U.S. 463, 465, 21 S.Ct. 197, 198, 45 L.Ed. 277 (1900))).

Because we find that the statute is not ambiguous, the rule of lenity does not apply. Even if we were to find that Williams' argument did reveal a genuine ambiguity in the statute, however, we would not be required to apply the rule of lenity in this case. "Ambiguity in a *criminal* statute is resolved in favor of the defendant because 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed' and because 'of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, [and therefore] legislatures and not courts should define criminal activity.'" *Thompson/Center Arms Co.,* —— U.S. at —— n. 2, 112 S.Ct. at 2114 n. 2 (Stevens, J., dissenting) (quoting *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971)). In this case, Williams had fair notice that a violation of the terms of his probation would result in revocation of his probation. *See Id.,* —— U.S. at ——, 112 S.Ct. at 2114 (Stevens, J., dissenting) ("The main function of the rule of lenity is to protect citizens from the unfair application of ambiguous punitive statutes. Obviously, citizens should not be subject to punishment without fair notice that their conduct is prohibited"). Further, the conduct that resulted in the revocation of his probation may well have resulted in the revocation of his parole, had his conduct been discovered by his parole officer prior to the commencement of his sentence of probation.

## B. Separation of Powers

■ Williams argues that Congress could not have intended Section 3651 to grant courts authority to revoke probation for pre-probation conduct because such authority would conflict with the constitutional principle of "separation of powers." Williams' Brief at 6. This argument maintains that allowing a court to revoke probation for pre-probation conduct would unduly interfere with executive administration of a convict's sentence. We find, however, that such authority does not conflict with the "separation of powers."

The United States Constitution protects individual liberty from the abuse of government power, in part, through the principle of "separation of powers." *Mistretta v. United States,* 488 U.S. 361, 380, 109 S.Ct. 647, 659, 102 L.Ed.2d 714 (1989). Separation of powers, however, means more than the "partition of power among the several departments." The Federalist No. 51, at 320 (James Madison) (Clinton Rossiter ed., 1961). James Madison, for one, understood that the partition would be inadequate to ensure the "preservation of liberty." *Id.* at 320–21. Instead, the framers of the Constitution sought to preserve liberty "by so contriving the interior structure of the government, as that its several constituent parts may, by their mutual relations, be the means of keeping each other in their proper places." *Id.* at 320. By allocating power amongst three branches, the Constitution established a system of "checks and balances" in which "[a]mbition [would] be made to counteract ambition" and "those who administer each department [would be given] the necessary constitutional means, and personal motives, to resist encroachments of the other [departments]." *Id.* at 321–22. Under this system, it was hoped, no one branch of government would be able to aggregate power and tread too heavily upon individual liberty.

■ The Constitution, of course, nowhere explicitly commands that the powers of government remain separate. Nevertheless, the Supreme Court has determined that "[t]he principle of separation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into the [Constitution]." *Buckley v. Valeo,* 424 U.S. 1, 124, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976). As such, the principle of separation of powers derives from the structure of the Constitution and the allocation of power within that structure. *See Plaut v. Spendthrift Farm, Inc.,* 1 F.3d 1487, 1499 (6th Cir.1993). The first three Articles of the Constitution are each devoted to one of the three branches: the legislature, the execu-

tive, and the judiciary.[5] *See INS v. Chadha,* 462 U.S. 919, 946, 103 S.Ct. 2764, 2781–82, 77 L.Ed.2d 317 (1983) ("The very structure of the Articles delegating and separating powers under Arts. I, II, and III exemplifies the concept of separation of powers"). Within each of the first three Articles, the Constitution implements a system of checks and balances by (1) positively ascribing power to a particular branch and (2) negatively proscribing the power of a particular branch. *See* Thomas W. Merrill, *The Constitutional Principle of Separation of Powers,* 1991 Sup.Ct. Rev. 225, 237–245 (distinguishing between the positive ascription of power through "attribution rules" and the negative proscription of power through "branch-specific limitations" or "exceptions"). For example, the Constitution positively ascribes to Congress the power "[t]o lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defence and general welfare of the United States," but requires that "all duties, imposts, and excises shall be uniform throughout the United States." U.S. Const. art. I, § 8. Negative proscriptions may be substantive (as in the requirement that duties, etc., be uniform) or procedural (as in the requirement that "Every order, resolution, or vote [of the Congress] shall be presented to the president of the United States...." U.S. Const. art. I, § 7). *See* Merrill, *The Constitutional Principle of Separation of Powers,* at 239–241 (distinguishing between substantive proscriptions "exceptions" and procedural proscriptions "branch-specific limitations"). For example, in *Chadha,* 462 U.S. at 958, 103 S.Ct. at 2787, the Supreme Court invalidated a legislative-veto provision of a statute on grounds that it violated the presentment and bicameralism features of separation of powers.

Although the principle of separation of powers flows from the structure and text of the Constitution, any attempt to limit considerations of separation of powers to a narrow textual interpretation of the Constitu-

tion is unlikely to be satisfactory. *See* The Federalist No. 48 at 308 (James Madison) (expressing doubt that it will "be sufficient to mark, with precision, the boundaries of these departments in the constitution of the government, and to trust to these parchment barriers against the encroaching spirit of power"). At a minimum, a positive ascription of power to a particular branch may be taken to imply a negative prohibition on the exercise of a similar power by the other two branches. For example, the fact that the Constitution grants the President "power to grant reprieves and pardons for offenses against the United States," U.S. Const. art. II, § 2, implies that the other branches do not have this power. *See Affronti v. United States,* 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955) (courts do not have authority to convert a subsequent custodial sentence into a probationary sentence once the defendant has begun to serve a custodial sentence). The Supreme Court appears to have gone even further in recognizing the inadequacies of a formal or narrowly textual approach to the separation of powers. In several decisions, for example, the Supreme Court has adopted a functional analysis of the separation of powers. *See, e.g., Mistretta,* 488 U.S. 361, 109 S.Ct. 647; *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988); *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *see generally* Merrill, at 229–235 (discussing the Supreme Court's use of "functional" analysis in separation of powers cases). By definition, however, a functional analysis must be guided by considerations of purpose. To determine whether a statute or an interpretation of a statute is consistent with the concept of separation of powers, therefore, we will consider the purpose of the concept of separation of powers and whether that pur-

---

5. We note that this structure appears to have followed from the only express consideration of the concept of the separation of powers at the Constitutional Convention, the resolution of the Committee of the Whole adopted May 30, 1787 providing: "that a national government ought to

be established consisting of a supreme legislative, judiciary, and executive." *See generally* Gerhard Casper, *An Essay in Separation of Powers: Some Early Versions and Practice,* 30 Wm. & Mary L.Rev. 211, 220 (1989).

pose is frustrated by the particular statute or interpretation.

To summarize, to determine whether our interpretation of judicial probation revocation authority under Section ·3651 is consistent with the principle of separation of powers we will consider: (1) whether the Constitution positively ascribes such authority to the judiciary, (2) whether negative proscriptions preclude the judiciary from exercising such authority, (3) whether positive ascriptions of authority to other branches create, by implication, a negative proscription on judicial authority, and (4) whether such authority so disrupts the balance of power amongst the three branches as to undermine the ultimate purpose of the separation of powers—protecting liberty from the dangers of centralized power.

In this case, the first and second considerations shed little light on the question whether judicial authority to revoke probation for pre-probation conduct violates the principle of separation of powers. First, nothing in the Constitution explicitly confers authority to revoke probation for pre-probation conduct upon the judiciary. The absence of such an ascription has little significance, however, given the fact that "[h]istorically, federal sentencing—the function of determining the scope and extent of punishment—never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government." *Mistretta,* 488 U.S. at 364, 109 S.Ct. at 650. Second, no constitutional limitation on the power of the judiciary precludes the judiciary from exercising authority to revoke probation for pre-probation conduct. Williams does not dispute, for example, that a probation revocation hearing falls within the case or controversy requirement of Article III, section 2, clause 1. Similarly, Williams does not contend that a probation revocation hearing following a trial in which the accused had the right to a trial by jury violates the language of Article III, section 2, clause 3.

The third consideration does not suggest that judicial authority to revoke probation for pre-probation conduct violates the principle of the separation of powers. The constitutionally ascribed powers of the executive and legislative branches do not, by negative implication, limit the authority of the judiciary in this instance. In particular, the executive's "Power to grant Reprieves and Pardons for Offenses against the United States," although it limits the power of the judiciary to *impose* probation, does not limit the power of the judiciary to *revoke* probation.

In *Affronti,* the Supreme Court held that once a convict has begun serving a custodial sentence, a court may not modify a subsequent custodial sentence into a probational sentence. The Supreme Court reasoned that such authority would interfere with the executive's power to make decisions concerning parole and executive clemency. If a court could convert a custodial sentence into a probational sentence, it could interfere with the power of clemency that has been traditionally reserved to the executive. *Affronti,* 350 U.S. at 83, 76 S.Ct. at 173.

The Fifth Circuit has extended *Affronti* to prohibit courts from revoking probation for conduct occurring after a defendant has been imprisoned. *United States v. Wright,* 744 F.2d 1127 (5th Cir.1984). *Wright,* however, ignores the critical aspect of the Supreme Court's decision in *Affronti.* In *Affronti,* the Supreme Court confronted a situation in which the judiciary assumed a power traditionally relegated to the executive. Because this assumption disrupted the balance of power governing the administrative of criminal justice, the Supreme Court held that the courts could not assume the power to suspend uncommenced terms of a cumulative sentence once the convict has been imprisoned. *Wright,* in contrast, did not involve the attempted assumption by the courts of a power traditionally relegated to the executive. In fact, *Wright* has been criticized in a number of jurisdictions on precisely this ground. *United States v. Daly,* 839 F.2d 598, 601 (9th Cir.1988); *United States v. Camarata,* 828 F.2d 974, 978 (3d Cir.1987), *cert. denied,* 484 U.S. 1069, 108 S.Ct. 1036, 98 L.Ed.2d 1000 (1988); *see also United States v. Johnson,* 892 F.2d 369 (4th Cir.1989); *United States v. Yancey,* 827 F.2d 83, 88 n. 5 (7th Cir.1987), *cert. denied,* 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 437 (1988); *United*

*States v. Durchslag,* 735 F.Supp. 298, 299–300 (N.D.Ill.1990).[6]

■ Williams argues that the existence of a "fraud on the court" exception to *Affronti,* indicates that there exists a general rule prohibiting judicial modification of probational sentences for pre-probation conduct occurring in executive custody. While, in general, a court may not modify custodial sentences once they have been imposed, *Affronti,* 350 U.S. at 83, 76 S.Ct. at 173, a court may modify a custodial sentence where the convict's conduct occurred while the defendant was in the custody of the court. This "fraud on the court" exception has been used by at least one circuit judge as a rationale for granting a court authority to revoke probation for pre-probation conduct occurring while the defendant was in the custody of the court. *See Camarata,* 828 F.2d at 981–83 (Becker, J., concurring). In our view, it would be incorrect to hold that because a court may modify a probational sentence for pre-probation conduct occurring during judicial custody there exists, by negative implication, a general prohibition on modification of probation for pre-probation conduct occurring during executive custody. The defendant essentially asks us, first, to recognize a fraud on the court "exception" allowing courts to revoke probation for pre-probation conduct occurring during judicial custody and, second, to create by negative implication a general prohibition against revocation of probation for pre-probation conduct occurring during executive custody. In the absence of a persuasive textual or functional justification for invoking the separation of powers, we decline to invoke the principle solely to endue the law with Euclidean symmetry. Although Holmes observed that "law is a seamless web," he would not have agreed that the web is necessarily symmetrical. Oliver W. Holmes, The Common Law 1 (1945) ("the life of the law has not been logic, it has been experience"). The fact that there exists authority to revoke probation for conduct occurring during periods of judicial custody does not preclude authority to revoke probation for conduct occurring during periods of executive custody. We find, therefore, that the power to modify a custodial sentence based on the "fraud on the court" exception does not create, by negative implication, a general rule against such modification.

We turn now to the fourth consideration. Like the first three, it does not suggest that judicial authority to revoke probation from pre-probation conduct violates the principle of separation of powers. Such authority does not so disrupt the balance of powers as to threaten individual liberty with the danger of abuse at the hands of centralized government authority.

■ To be sure, the Constitution grants the executive the "Power to grant Reprieves and Pardons for Offenses against the United States." Once a convict has begun serving a custodial sentence, therefore, the courts may not change a subsequent custodial sentence into a sentence of probation. *Affronti,* 350 U.S. at 83, 76 S.Ct. at 173. Where a convict's pre-probation conduct prompts a court to revoke a sentence of probation, however, the court does not modify an existing custodial sentence. Rather, the court effectively converts a probationary sentence into a custodial sentence. The resulting custodial sentence is not, strictly speaking, new. The possibility that a probationary sentence would be converted into a custodial sentence is inherent in the very notion of probation. *See Burns v. United States,* 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932). Furthermore, the conversion of a probationary sentence into a custodial sentence still leaves the executive free to administer the converted sentence. The executive would be free to pardon the convict for the offense that resulted in the probationary sentence in the first place. In addition, once the converted custodial sentence begins, the executive would be

---

6. *Wright* has also been criticized in this circuit by *United States v. Myers,* 799 F.Supp. 790, 794–96 (W.D.Mich.1992). *Myers* has, however, been reversed in an unpublished opinion, *United States v. Myers,* No. 92–1900, 1993 WL 158488, 1993 U.S.App. LEXIS 12556 (6th Cir. May 14, 1993), *reported at table,* 993 F.2d 1548 (6th Cir.1993). Inasmuch as this circuit's opinion in *Myers* is unpublished, however, it is not precedent. *See* 6th Cir.R. 24(c) ("Citation of unpublished decisions ... is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.").

free to apportion (within limits prescribed by the legislature) that sentence between periods of incarceration and parole. *See United States v. Yancey,* 827 F.2d 83 (reversing a district court's determination that it lacked authority to revoke probation for pre-probation conduct).[7] Further, judicial authority to revoke probation for pre-probation conduct seems especially unlikely to disrupt the balance of power in cases such as this in which agents of the executive have requested the court to revoke probation.

Several courts have held that a court may revoke probation for pre-probation conduct that occurred while the convict was serving a custodial sentence in prison. *Daly,* 839 F.2d at 598; *Yancey,* 827 F.2d at 83; *Durchslag,* 735 F.Supp. at 298. Nothing in the concept of the separation of powers limits this authority to incarcerated convicts. Even a paroled convict whose pre-probation conduct prompts a court to convert a period of probation into a custodial sentence may be pardoned of the converted custodial sentence so that he or she continues on parole. *See Johnson,* 892 F.2d at 370–371 (holding that such authority exists); *Ross,* 503 F.2d at 943 (same).

We conclude, therefore, that the authority to revoke probation for pre-probation conduct does not concentrate power in the judiciary so as to disrupt the balance of power amongst the legislative, executive, and judicial branches.

In light of these four considerations, we find that our interpretation of Section 3651 is not inconsistent with the concept of the separation of powers.

### C. Williams' Sentence

Having determined that the court had the authority to revoke probation for Williams' pre-probation conduct, it remains to be determined whether the court below abused its discretion in exercising that authority to revoke Williams probation and commit him to ten years in prison.

 We will reverse a district court's decision to revoke probation and to impose a custodial sentence only where the district court clearly abused its discretion. *See, e.g., United States v. Miller,* 797 F.2d 336, 339 n. 4 (6th Cir.1986). Further, because Williams' sentence was imposed for conduct occurring before the effective date of the Federal Sentencing Guidelines, we will review the actual term of years imposed only where the term exceeds statutory limitations or is so severe as to raise constitutional concerns. *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).

 We find Williams' sentence to be within statutory limitations. Judge Gilmore sentenced Williams to imprisonment for ten years, the maximum permitted by statute for forgery in violation of 18 U.S.C. § 510 (1988).[8] Generally, a sentence within statutory limitations does not violate the Eighth Amendment. *Akers v. United States,* 280 F.2d 198 (6th Cir.), *cert. denied,* 364 U.S. 924, 81 S.Ct. 289, 5 L.Ed.2d 262 (1960). This is because the particular statutory limitations chosen by Congress involve "substantive penological judgments" ordinarily best left to Congress. *See United States v. McLean,* 951 F.2d 1300, 1303 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1775, 118 L.Ed.2d 433 (1992).

 At the first sentencing, in 1985, Judge Gilmore found that Williams' forgery was part of a "very serious offense" involving a tremendous amount of money." Furthermore, the judge stated that he "fully intended originally to give you ... six years but I am modifying that because I think there is an effort to really recompense here with restitution." *Id.* Given that Williams subsequently used his sentence of restitution as the premise for a second fraud perpetrated upon the same victims, it was not an abuse of discretion to sentence Williams to the statutory maximum. Nor, in the face of such facts, does a sentence of ten years consecutive to a four year sentence "shock the con-

---

7. *Yancey* overruled *United States v. Dick,* 773 F.2d 937 (7th Cir.1985), which held that a district court did not have authority to revoke probation for pre-probation conduct.

8. Judge Gilmore suspended Williams' sentence for possession of stolen mail in violation of 18 U.S.C. § 1708 (1988).

science." *See Boerngen v. United States,* 326 F.2d 326 (5th Cir.1964) (holding that two consecutive sentences of 10 years in two cases involving transportation of forged instrument in interstate commerce did not violate Eighth Amendment).

We find that Judge Gilmore did not abuse his discretion in revoking Williams' probation and in sentencing him to a term of ten years imprisonment.

Judgment affirmed.