**James E. KNIGHT, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 93–1769.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1994.

Decided Aug. 10, 1995.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Jan. 18, 1996.

**118**

Jerold S. Solovy, Richard P. Steinken, Daniel W. Smith (argued), Jenner & Block, Chicago, IL, for petitioner-appellant.

Grant C. Johnson, Asst. U.S. Atty., Steven Pray O'Connor, Asst. U.S. Atty. (argued), Office of U.S. Atty., Madison, WI, for respondent-appellee.

* The Honorable Myron L. Gordon, District Judge for the Eastern District of Wisconsin, is sitting by

Before CUDAHY and MANION, Circuit Judges, and GORDON, District Judge.*

CUDAHY, Circuit Judge.

James Knight brings this action pursuant to 28 U.S.C. § 2255 contesting the revocation of his probation. Knight did not file a direct appeal and concedes that he cannot show cause for and prejudice from this failure. Accordingly, we review only for jurisdiction. *Kelly v. United States,* 29 F.3d 1107, 1113 (7th Cir.1994). Knight asserts that the district court lacked jurisdiction in two regards: (1) to exercise its probationary power when Knight was under the control of the United States Parole Commission; and (2) to revoke his probation based on pre-probation conduct that occurred while Knight was on parole. Knight argues that under *Affronti v. United States,* 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955), and *United States v. Murray,* 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928), the district court, by revoking his probation while he was on parole and for conduct occurring during Knight's parole term, violated the relevant statutes and the separation of powers by improperly extending the judicial function of sentencing to invade the executive functions of clemency and parole.

Knight's argument raises two separate questions: (1) whether the district court may exercise probationary power while a convict is on parole; and (2) whether the district court may revoke probation for pre-probation conduct occurring while the convict is on parole. These are difficult questions (the former question being one of first impression in this circuit) that require us to balance the goals of probation against the desire to maintain an orderly governmental structure. After a good deal of deliberation, we hold that the Probation Act empowers the district court to revoke probation while a convict is on parole and to consider all relevant conduct, including conduct that occurs while the convict is under executive branch control.

### I.

In September of 1987, Knight pleaded guilty to a two-count indictment for false

designation.

representation of a social security number, 42 U.S.C. § 408(g)(2),[1] and for mail fraud, 18 U.S.C. § 1341. On the social security count, the district court sentenced Knight to a five-year term of imprisonment, which Knight began serving on November 6, 1987. On the mail fraud count, Knight was sentenced to a five-year term of imprisonment that was suspended in favor of five years of probation to commence upon his release from supervision under the social security count. Knight's probation was subject to special conditions: he was required to make restitution in payments of $5,988.64 per month and he was prohibited from engaging in self-employment during the probation period, except with the express written consent of the court. *See* Transcript of December 5, 1991, Revocation of Probation.[2]

Knight did not serve the full five years of imprisonment for which he was sentenced. In October of 1990, he was paroled. By September of 1991, however, Knight had violated the terms of his parole by illegally "playing the float" of his checking account. Knight and the United States Parole Commission agreed that Knight would plead guilty to the violation, and the parole board would allow Knight to remain on parole.[3] The parole board did not revoke Knight's parole at that time. However, the parole

board informed the Office of Probation for the Western District of Wisconsin of Knight's conduct and the need for a request for judicial review of the terms of Knight's probation. The district court apparently took a different view of Knight's activities, revoking Knight's probation and ordering him to serve the five-year term of imprisonment originally suspended on the mail fraud count.[4]

## II.

Parole and probation, now superseded by supervised release,[5] are distinct conditions. Parole is an extension of the Constitutional grant of clemency power given to the President. Under the clemency power, U.S. Const., Art. II, § 2, the President, generally by delegation to the United States Parole Commission, an executive-branch agency, may grant an imprisoned convict a suspension of the remainder of his sentence. *See, e.g.,* Exec.Order No. 11919, 41 Fed.Reg. 23663 (1976), *reprinted as amended in* 18 U.S.C. § 4203(b). Probation, in contrast, is a legislatively created power granted to the judicial branch under the Federal Probation Act. Unlike parole, probation is a type of sentence imposed in lieu of imprisonment. *See* 18 U.S.C. § 3561; *United States v. Granderson,* —— U.S. ——, —— n. 3, 114 S.Ct. 1259, 1262 n. 3, 127 L.Ed.2d 611 (1994).[6]

1. Redesignated in 1990 as § 408(a)(7)(B).

2. This transcript was not originally part of the record on appeal. Knight filed a motion with the district court to supplement the record with the transcript. (*See* Appellant's Br. at 4, n. 2, referring to a February 2, 1994 motion). We have no record that the district court acted on the motion. Consequently, we construe the request as being directed to this court and grant the motion.

3. Under this plea agreement, Knight admitted to violations of both state and federal law and agreed not to contest liability in any future revocation proceeding involving these charges. Additionally, the plea agreement provided that Knight could be recharged if he violated the terms of the agreement, specifically, if at some future revocation proceeding he denied guilt.

4. At oral argument counsel informed us that Knight's parole was revoked in February of 1991 after the district court revoked Knight's probation. In February 1995, Knight was released on parole, which is his current status.

5. *See* S.Rep. 225, 98th Cong., 2d Sess. 1, 122–125, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3305–

3308 (discussing 18 U.S.C. § 3583(a)). Unlike parole, a term of supervised release does not replace a portion of the term of imprisonment. Supervised release is an order of supervision imposed *in addition* to any term of imprisonment imposed as part of the sentence. Thus, supervised release is more analogous to the additional "special parole term" previously authorized for certain drug offenses. *See* 21 U.S.C. § 841(b), (c) (repealed Oct. 12, 1984, but applicable to offenses committed prior to Nov. 1, 1987). Because the district court monitors a convict's compliance with the terms and conditions of supervised release, 18 U.S.C. § 3583(e), the potential conflict between the executive and judicial branches does not occur when the convict is on supervised release.

6. *See* Pub.L. 98–473, Title II, § 212(a)(1), (2), Oct. 12, 1984, 98 Stat. 1987 (repealing §§ 3651 to 3656; however, remaining applicable to offenses committed prior to Nov. 1, 1987); *Granderson,* —— U.S. at —— n. 3, 114 S.Ct. at 1262 n. 3 ("The Sentencing Reform Act of 1984, for the first time, classified probation as a sentence; before 1984, probation had been considered an

Probation does not involve the suspension of an on-going incarceration. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 88 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3271. Instead, the trial court grants probation at the time of sentencing, substituting it for the imposition or execution of either part or the entirety of the sentence, *see Murray,* 275 U.S. at 352–53, 48 S.Ct. at 147–48, and thereafter monitors the probationer's conduct. 18 U.S.C. §§ 3601–07. In their practical application, parole and probation are very similar—both constituting a means by which a convicted felon may be "re-introduced" into society on a controlled basis. Under both regimes, a convict escapes actual imprisonment on condition of consistent good behavior. *See Burns v. United States,* 287 U.S. 216, 220, 53 S.Ct. 154, 155–56, 77 L.Ed. 266 (1932) (federal probation is "designed to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable.")

Because parole and probation emanate from different branches of government, the responsibility for the terms, conditions and supervision of each lies with different agencies. The judiciary manages probation, while authority over parole is wielded under the Constitution by the executive branch. *Cf. Duehay v. Thompson,* 223 F. 305, 307 (9th Cir.1915) (finding parole tantamount to a commutation). The Parole Commission supervises the paroled convict, 18 U.S.C. §§ 4201–18, *repealed* Oct. 12, 1984, 98 Stat. 2027 (repeal effective Nov. 1, 1987 for offenses committed after that date), and may at any time, upon notice and hearing, change the conditions of the parole, revoke it or even terminate it entirely. *See* 18 U.S.C. §§ 4209(d)(1) (modification), 4211(a) (termi-

nation), 4213 (revocation). The conduct of probationers, on the other hand, is monitored by judicially-appointed probation officers within the Probation Department. *See* 18 U.S.C. §§ 3653–55. Probation may similarly be amended, revoked or terminated by the sentencing court at the recommendation of the Probation Department or on the motion of the government. *See* 18 U.S.C. §§ 3565(a) (revocation, modification), 3564(c) (termination).

■ The federal court has no inherent power or authority over probation. Its jurisdiction derives solely from Congress by statute. The court's jurisdiction to allow probation instead of a sentence of imprisonment and its power to revoke or modify a probationary term are provided for in 18 U.S.C. §§ 3651 & 3653 (1982). In *Affronti,* the Supreme Court held that the probation statute must be applied in such a way as to "avoid interference with the parole and clemency powers of the Executive Branch." 350 U.S. at 83, 76 S.Ct. at 173–74. *Compare* 18 U.S.C. §§ 4201–18 (governing parole; repealed in October of 1984 but remaining in effect as to persons who committed offenses before Nov. 1, 1987. Pub.L. 98–473, Title II, § 218(a)(4), Oct. 12, 1984, 98 Stat. 2027), *with* 18 U.S.C. §§ 3651 and 3653 (governing probation where, as here, the underlying offense occurred before the enactment of the Sentencing Reform Act of 1984 (SRA)).[7]

## III.

■ The parameters of a federal court's authority over probation is a question on which we have focused some attention in the past. In *United States v. Yancey,* 827 F.2d 83 (7th Cir.1987), *cert. denied,* 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 437 (1988), we held that a court may revoke probation based

---

alternative to a sentence," *citing* S.Rep. 225, 98th Cong., 2d Sess. 1, 88, *reprinted in* 1984 *U.S.C.C.A.N.* 3182).

7. The district court erroneously relied on 18 U.S.C. § 3565 of the Sentencing Reform Act of 1984 (SRA). Sections 3561–3566 took effect on November 1, 1987 and repealed the prior Act. The SRA is not applicable to Knight because his underlying offenses, the mail fraud and social security crimes, occurred prior to November 1,

1987. The fact that Knight committed the acts that violated the conditions of his probation *after* November 1, 1987 does not make the SRA applicable. *See United States v. Abdul–Hamid,* 966 F.2d 1228, 1230 (7th Cir.1992); *accord United States v. Barnett,* 961 F.2d 1327, 1327 and n. 1 (7th Cir.1992) (per curiam) (pre-SRA law must be applied where offense occurred before effective date of SRA but probation violation occurred after effective date).

on pre-probation conduct. 827 F.2d at 88. *Accord United States v. Williams*, 15 F.3d 1356, 1363 (6th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994); *United States v. Taylor,* 931 F.2d 842, 845 (11th Cir.1991), *cert. denied,* 502 U.S. 1102, 112 S.Ct. 1191, 117 L.Ed.2d 433 (1992); *United States v. Fryar,* 920 F.2d 252, 254 & n. 3 (5th Cir.1990); *cert. denied,* 499 U.S. 981, 111 S.Ct. 1635, 113 L.Ed.2d 730 (1991); *United States v. Johnson,* 892 F.2d 369 (4th Cir.1989); *United States v. Daly,* 839 F.2d 598 (9th Cir.1988); *United States v. Veatch,* 792 F.2d 48, 52 (3d Cir.), *cert. denied,* 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). *Yancey,* however, dealt with the more general question of how the statute treats pre-probation conduct. It did not address the question, presented in this case, of offenses that are committed not only before the onset of probation, but while the defendant is under the control of a coordinate and co-equal branch of government. This is a question, however, that other circuits have addressed. *See United States v. Wright,* 744 F.2d 1127 (5th Cir.1984), and *Williams,* 15 F.3d 1356. In *Wright,* the Fifth Circuit held that a district court may not revoke probation based on an act committed prior to the probationary period if the act occurred while the defendant was on parole from another sentence to be served before his consecutive probationary term commenced. 744 F.2d at 1130. The district court revoked Wright's probation while Wright was on parole. However, the Fifth Circuit concluded that such action by the district court was prohibited by *Affronti* because it "'unnecessarily overlap[ped] the parole and executive clemency provisions of the law.'" *Id.* (quoting *Affronti,* 350 U.S. at 83, 76 S.Ct. at 173–74).[8]

On the other hand, in *Williams,* the Sixth Circuit held that a court may revoke probation for pre-probation conduct that occurred while the convict was under the control of the executive branch. In that case the convict,

Williams, committed several new crimes while on parole. His criminal acts, however, were not brought to the district court's attention until Williams had "successfully" completed his parole period and had begun to serve the consecutive five-year period of probation to which he had been originally sentenced. One month into the probationary period, Williams was indicted for the new crimes. Williams pleaded guilty to the new crimes, and the district court subsequently revoked his probation, finding that "Williams had violated the conditions of his probation by virtue of his pre-probation offenses." 15 F.3d at 1357.

The Sixth Circuit considered whether allowing a court to revoke probation for pre-probation conduct would unduly interfere with executive administration of a convict's sentence. 15 F.3d at 1360–64. The court concluded that such authority did not conflict with the "separation of powers" principle. We find its reasoning persuasive, although we are troubled by the direct conflict that apparently occurred in Knight's case. Here, unlike in *Williams,* the parole board was aware of the violative conduct, chose to act on the conduct and chose to allow Knight to remain on parole. On the other hand, in *Williams,* we assume that the parole board was unaware of the conduct that occurred while Williams was on parole. What seems disturbing in our case, is the action of the parole board in forwarding the information about Knight's conduct to the Office of Probation. The parole board made an agreement with Knight: extracting a guilty plea and a promise not to contest liability in *any* future proceeding in exchange for allowing Knight to remain on parole. How this can be squared with bringing the matter before the district court apparently with the expectation that the court might put Knight back in prison after his parole has expired is not easy to understand. However, we do not believe that the parole board somehow lured

8. Our opinion in *Yancey,* in dicta, expresses some uneasiness with some aspects of *Wright:* Both *Veatch,* [792 F.2d 48 (3rd Cir.), *cert. denied,* 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986)] and *Wright,* relying on *Affronti,* suggest that the district court can only modify probation when the defendant has not

begun to serve a period of incarceration. *Veatch,* 792 F.2d at 50; *Wright,* 744 F.2d at 1131. Although we have some doubt as to the correctness of this holding, we need not decide this question because the defendant did not raise the issue on appeal. 827 F.2d at 88 n. 5.

Knight with the promise of his continued freedom into pleading guilty while secretly knowing all along that the district court on receipt of Knight's file might revoke his probation. We may assume, as Knight has not argued to the contrary, that Knight knew that the district court would be informed of his conduct, and that revocation of his probation would therefore be a possibility. The contingency that a probationary sentence would be converted into a custodial sentence is inherent in the very notion of probation. *See Burns v. United States,* 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932). More relevantly, we do not understand Knight to be charging a due process violation. We are concerned here only with the question of jurisdiction.

It is certainly possible for the parole and probation authorities to work together and this would seem to be highly desirable. In any event, the *jurisdiction* of the court to revoke probation for pre-probation conduct cannot be said to "conflict" with the authority of the agents of the executive branch to revoke parole and/or inform the judiciary of violative conduct. *See Williams,* 15 F.3d at 1364. Nor can we say that the district court may not revoke probation at the time that the defendant is in prison or on parole (and therefore under executive control) since it would make little sense for the court to first stay its hand and then take action later after the probationary term began. If we accepted Knight's argument that such a denial of authority is required, we would provide incarcerated defendants with a grace period in which their activity, no matter how heinous, could not affect their probationary release into society. It is unlikely that Congress, which authorized probation, intended to deprive the original sentencing court of its continuing authority over the probationary sentence.

We believe that our reading of the jurisdictional grant of § 3651 and § 3653 is consistent with the interpretation of the sentencing court's authority prescribed in *Affronti.* The Supreme Court held, in *Affronti,* that a district court does not have jurisdiction under § 3651 to "suspend the uncommenced terms of a cumulative sentence after the prisoner

has been imprisoned and entered upon the execution of a prior term." 350 U.S. at 83, 76 S.Ct. at 173. The Court reasoned that such authority would interfere with the executive branch's power over parole and clemency. If the judiciary could grant an incarcerated prisoner relief from his prison term by converting the custodial sentence into a probational sentence, the judiciary could effectively grant clemency. *Id.* "[I]n view of the existence of provisions for parole and executive clemency, it would seem unlikely that Congress would have intended to make the probation provisions applicable during the same period of time." 350 U.S. at 81, 76 S.Ct. at 172.

The government, as well as the Sixth Circuit in *Williams,* points out that *Affronti* is distinguishable, addressing the question whether a district court may *grant* a probationary term to an imprisoned convict, *see* 350 U.S. at 80, 76 S.Ct. at 172 ("power to suspend sentence"), whereas the case before us deals with the revocation, rather than the grant, of probation. *Williams,* 15 F.3d at 1362. *Affronti* holds that the district court lacks jurisdiction to *grant* probation because such a grant of probation effectively amounts to a grant of clemency and thus infringes upon the domain of the executive branch. 350 U.S. at 83, 76 S.Ct. at 173–74. *Revoking* probation, however, certainly cannot be said to be an act of clemency. Admittedly, the district court here *acted* during a period when the executive branch had control of Knight. However, that action did not disrupt the authority given to the executive branch under the Constitution to grant or deny parole to eligible federal prisoners and to impose reasonable conditions on such parole. And, as we have indicated, it would make little sense to require the court to stay its hand until parole ended and probation began—a time at which its acting would presumably not intrude upon the jurisdiction of the executive branch. The Parole Commission chose to allow Knight to remain on parole despite his admitted violation of its conditions. In doing so, the executive branch effectively exercised clemency. However, this "clemency", unlike the presidential par-

don, does not extend beyond the parole period.[9]

That the district court may revoke a convict's future probation based on an admitted parole violation *while the convict is in executive branch custody*, does not impinge upon the parole board's clemency-like powers. To hold otherwise, would unnecessarily tie the hands of the district court and create an indefensible loop-hole, whereby a convict considered by the court to be unsuitable for public release would be entitled to probation merely because of the timing of his violative conduct. It is possible, of course, that the government may fail to obtain a parole revocation and may subsequently press for revocation of probation (as was apparently the case here). Although this may lead to questionable results in the exercise of discretion, there is nothing so contradictory as to deny the court jurisdiction. Nor is the double jeopardy clause implicated. *See United States v. Hanahan,* 798 F.2d 187, 189 (7th Cir.1986) (finding that the protections of the double jeopardy clause are not triggered by a parole revocation proceeding); *United States v. Whitney,* 649 F.2d 296, 298 (5th Cir.1981) (per curiam) (declining to extend the double jeopardy clause to probation revocation proceedings).

The Supreme Court said in *Affronti,* that "within the Congressional intent, the probation statute should not be 'appl[ied] in such a way as to unnecessarily overlap the parole and executive-clemency provisions of the law' and should be interpreted in such a way as 'to avoid interference with the parole and clemency powers vested in the Executive Branch.'" *Wright,* 744 F.2d at 1129 (quoting *Affronti,* 350 U.S. at 83, 76 S.Ct. at 173–74). Our interpretation of the Probation Act is cautious and, we believe, avoids unnecessary overlap. That "multiple authorities" may "impose multiple sanctions is 'simply another manifestation of a central fact underlying modern federal criminal procedure: the power to determine the length and conditions of an individual criminal's punishment is dispersed between the judicial and executive branches.'" *United States v. Camarata,* 828 F.2d 974, 978 (3rd Cir.1987), *cert. denied,* 484 U.S. 1069, 108 S.Ct. 1036, 98 L.Ed.2d 1000 (1988) (quoting *Diggs v. United States,* 740 F.2d 239, 246 (3rd Cir.1984)). Here, the parole board chose not to return Knight to jail. The judiciary's different decision with respect to the very same conduct is not a conflicting determination. Notwithstanding the fact that both may result in incarceration, probation and parole revocation proceedings involve different considerations, not to mention different periods of time. Accordingly, it is not inconsistent for the parole board to find a person suited to parole, whom the court believes not to be ready for a more lengthy period of probation.

■ This analysis aims to clarify our previous holding of *Yancey.* In *Yancey* we held that "the Probation Act does not preclude a court from revoking probation for a pre-probation offense." 827 F.2d at 88. Today we hold that at such a pre-probation revocation hearing the district court may consider all relevant conduct, including conduct that the parole board has also considered and/or acted upon.[10]

Therefore, the judgment of the district court is

Affirmed.

---

9. Previously, we have held that "[a] parole revocation proceeding is an administrative proceeding designed to determine whether a parolee has violated the conditions of his parole, not a proceeding designed to punish a criminal defendant for violation of a criminal law." *United States v. Hanahan,* 798 F.2d 187, 189–90 (7th Cir.1986). Our reference to clemency-like powers does not conflict with this.

10. Contrary to counsel's argument in the petition for rehearing, our decision is consistent with *Yancey's* suggestion that the Probation Act should be broadly, rather than literally, construed. In *Yancey,* we interpreted §§ 3651 and 3653 in holding that "the Probation Act does not limit judicial authority to revoke probation to acts committed within the probation period." 827 F.2d at 86. In addition, the court concluded that its broad reading of the Probation Act did not violate the caveat found in § 3651 that probation should not exceed five years. *Id.* at 88. Nothing in the Probation Act precludes our conclusion that the district court may exercise probationary power while a convict is on parole, nor does the language of the Probation Act require a different result.